# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOANNE CARPENTER, AIXA MERCADO, and CHELSEA MOORE, on behalf of themselves and all others similarly situated, | |
| **Plaintiffs,** | 13 Civ. 4009 (GBD) |
| -against- | |
| PAIGE HOSPITALITY GROUP, LLC, FONDUE 26, LLC, PARK AVENUE A, LLC, MATTHEW SHENDELL and DENNIS BOGART, | |
| **Defendants.** | |

## MEMORANDUM OF LAW
### IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS, APPOINTMENT OF PLAINTIFFS' COUNSEL AS CLASS COUNSEL, AND APPROVAL OF PLAINTIFFS' PROPOSED NOTICE OF SETTLEMENT AND CLASS ACTION SETTLEMENT PROCEDURE

**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer
Eric J. Gitig
475 Park Avenue South, 12th Floor
New York, New York 10016
Telephone: (212) 300-0375

*Attorneys for Plaintiffs and*
*the Putative Class*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................. iii

INTRODUCTION ................................................................................................................... 1

PROCEDURAL BACKGROUND .......................................................................................... 1

I.      OVERVIEW OF INVESTIGATION AND COMMENCEMENT OF THE ACTION ........ 1

II.     PROPOSED CERTIFICATION MOTION AND INITIAL DISCOVERY ..................... 2

III.    ADDITIONAL DISCOVERY AND SETTLEMENT CONFERENCES ......................... 3

SUMMARY OF THE SETTLEMENT TERMS ..................................................................... 5

I.      THE SETTLEMENT FUND ........................................................................................ 5

II.     RELEASE ..................................................................................................................... 5

III.    ELIGIBLE EMPLOYEES ........................................................................................... 6

IV.    ALLOCATION FORMULA ........................................................................................ 6

V.     ATTORNEYS' FEES AND LITIGATION COSTS ....................................................... 7

CLASS ACTION SETTLEMENT PROCEDURE .................................................................. 7

ARGUMENT .......................................................................................................................... 9

I.      PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE ................ 9

      A.    The Settlement Is Fair, Reasonable, And Adequate ............................................ 11

           1.    Litigation Through Trial Would Be Complex, Costly, And Long
(*Grinnell* Factor 1) ................................................................................. 11

           2.    The Reaction Of The Class Has Been Positive (*Grinnell* Factor 2) ......... 12

           3.    Discovery Has Advanced Far Enough To Allow The Parties To
Responsibly Resolve The Case (*Grinnell* Factor 3) ................................ 12

           4.    Plaintiffs Would Face Real Risks If The Case Proceeded (Grinnell
Factors 4 And 5) ........................................................................................ 14

           5.    Establishing A Class And Maintaining It Through Trial Would Not
Be Simple (*Grinnell* Factor 6) ................................................................ 15

           6.    Defendant's Ability to Withstand a Greater Judgment Is Not
Assured (*Grinnell* Factor 7) .................................................................... 15

           7.    The Settlement Fund Is Substantial In Light Of The Possible Recovery
And The Attendant Risks Of Litigation (*Grinnell* Factors 8 and 9) ......... 16

i

II.    CONDITIONAL CERTIFICATION OF THE RULE 23 SETTLEMENT  CLASS
       IS APPROPRIATE ................................................................................................ 17

       A.    Numerosity .............................................................................................. 18

       B.    Commonality ........................................................................................... 18

       C.    Typicality ................................................................................................ 19

       D.    Adequacy Of The Named Plaintiffs ....................................................... 20

       E.    Certification Is Proper Under Rule 23(b)(3) .......................................... 21

             1.    Common Questions Predominate ................................................. 21

             2.    A Class Action Is A Superior Mechanism .................................... 22

III.   F&S SHOULD BE APPOINTED AS CLASS COUNSEL ................................. 23

IV.    THE PROPOSED CLASS NOTICE IS APPROPRIATE .................................. 23

V.     PLAINTIFFS WILL SEEK APPROVAL OF THE FLSA SETTLEMENT ................... 24

CONCLUSION ............................................................................................................... 25

**TABLE OF AUTHORITIES**

**Cases**.................................................................................................**Page Number**

*Ansoumana v. Gristede's Operating Corp.*,
    201 F.R.D. 81 (S.D.N.Y. 2001) ........................................................... 24

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997) ........................................................................... 22

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000)............................................... *passim*

*Bodon v. Domino's Pizza, LLC*,
    No. 09 Civ. 2941 (SLT), 2014 WL 3605507 (E.D.N.Y. June 25, 2014).................................. 13

*Cagan v. Anchor Sav. Bank FSB*,
    No. 88 Civ. 3024 (CPS), 1990 WL 73423 (E.D.N.Y. May 22, 1990)...................................... 16

*Castagna v. Madison Square Garden, L.P.*,
    No. 09 Civ. 10211 (LTS)(HP), 2011 WL 2208614 (S.D.N.Y. June 7, 2011) ....................... 11

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001).............................................................. 12

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974).......................................................... *passim*

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
    502 F.3d 91 (2d Cir. 2007) ............................................................... 21

*County of Suffolk v. Long Island Lighting Co.*,
    710 F. Supp. 1422 (E.D.N.Y. 1989) .................................................. 17

*Damassia v. Duane Reade, Inc.*,
    250 F.R.D. 152 (S.D.N.Y. 2008) .................................................. 20, 22

*Daniels v. City of New York*,
    198 F.R.D. 409 (S.D.N.Y. 2001) ...................................................... 19

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006) ............................................................. 21

*Dziennik v. Sealift, Inc.*,
    No. 05 Civ. 4659 (DLI)(MDG), 2007 WL 1580080 (E.D.N.Y. May 29, 2007) .................... 21

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
    Nos. 05 Civ. 10240 (CM) *et al*, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ...................... 10

*Flores v. Hanover, LLC*,
    No. 13 Civ. 5184 (AJP), 2014 WL 632189 (S.D.N.Y. Feb. 18, 2014) ......................... 19

*Flynn v. New York Dolls Gentleman's Club*,
    No. 13 Civ. 6530(PKC)(RLE), 2014 WL 4980380 (S.D.N.Y. Oct. 6, 2014)...................... 9-10

*Frank v. Eastman Kodak Co.*,
　228 F.R.D. 174 (W.D.N.Y. 2005)........................................................................ *passim*

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
　55 F.3d 768 (3d Cir. 1995) ............................................................................... 17

*Gen. Tel. Co. of Sw. v. Falcon*,
　457 U.S. 147 (1982)....................................................................................... 18-19

*Gilliam v. Addicts Rehab. Ctr. Fund*,
　No. 05 Civ. 3452 (RLE), 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ............... 7, 16

*Goldberger v. Integrated Res., Inc.*,
　209 F.3d 43 (2d Cir. 2000) .................................................................................. 11

*Gortat v. Capala Bros., Inc.*,
　257 F.R.D. 353 (E.D.N.Y. 2009) ........................................................................ 18

*Green v. Wolf Corp.*,
　406 F.2d 291 (2d Cir. 1968)............................................................................... 22

*Hanifin v Accurate Inventory and Calculating Serv., Inc.*,
　No. 11 Civ. 1510 (MAD)(ATB), 2014 WL 4352060 (N.D.N.Y. Aug. 20, 2014).................. 13

*Hernandez v. Anjost Corp.*,
　No. 11 Civ. 1531 (AT), 2013 WL 4145952 (S.D.N.Y. Aug. 14, 2013) .................. 20

*In re Ira Haupt & Co.*,
　304 F.Supp. 917 (S.D.N.Y. 1969) ...................................................................... 14

*Kamean v. Local 363, Int'l Bhd. of Teamsters*,
　109 F.R.D. 391 (S.D.N.Y. 1986) ........................................................................ 19

*Lizondro-Garcia v. Kefi LLC*,
　300 F.R.D. 169, (S.D.N.Y. 2014) ....................................................................... 13

*Lovaglio v. W & E Hospitality Inc.*,
　No. 10 CIV 7351 (LLS), 2012 WL 1890381 (S.D.N.Y. Mar. 12, 2012)........................... 10, 19

*Maley v. Del Global Techs. Corp.*,
　186 F. Supp. 2d 358 (S.D.N.Y. 2002)................................................................. 12

*Marisol A. v. Giuliani*,
　126 F.3d 372 (2d Cir. 1997)............................................................................... 19

*Marisol A. v. Giuliani*,
　185 F.R.D. 152 (S.D.N.Y. 1999) ........................................................................ 14

*Martens v. Smith Barney, Inc.*,
　181 F.R.D. 243 (S.D.N.Y. 1998) .................................................................. 13, 21

*Maywalt v. Parker & Parsley Petroleum Co.*,
　67 F.3d 1072 (2d Cir. 1995)................................................................................. 9

*McBean v. City of New York*,
　228 F.R.D. 487 (S.D.N.Y. 2005) ........................................................................ 21

iv

*McKenna v. Champion Intern. Corp.*,
  747 F.2d 1211 (8th Cir. 1984) ........................................................................24-25

*McMahon v. Olivier Cheng Catering & Events, LLC*,
  No. 08 Civ. 8713 (PGG), 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010)................................. 25

*In re Michael Milken & Assocs. Sec. Litig.*,
  150 F.R.D. 46 (S.D.N.Y. 1993) ........................................................................... 24

*Monzon v. 103W77 Partners, LLC*,
  No. 13 Civ. 5951 (AT) *et al*, 2014 WL 6480557 (S.D.N.Y. Oct. 15, 2014) ................. 9, 23, 24

*Morris v. Affinity Health Plan, Inc.*,
  859 F. Supp. 2d 611 (S.D.N.Y. 2012).............................................................. 20, 22

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972)............................................................................. 16

*O'Dell v. AMF Bowling Ctrs., Inc.*,
  No. 09 Civ. 759 (DLC), 2009 WL 6583142 (S.D.N.Y. Sept. 18, 2009) ........................... 21

*Odom v. Hazen Transport, Inc.*,
  275 F.R.D. 400 (W.D.N.Y. 2011)................................................................. 12-13

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ........................................................................... 16

*In re PaineWebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997) ....................................................................... 14

*In re PaineWebber Ltd. P'ships Litig.*,
  147 F.3d 132 (2d Cir. 1998)............................................................................... 9

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
  163 F.R.D 200 (S.D.N.Y. 1995) .......................................................................... 9

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
  237 F.R.D. 26 (E.D.N.Y. 2006) ........................................................................ 18

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993) ............................................................................ 20

*Rossini v. Ogilvy & Mather, Inc.*,
  798 F.2d 590 (2d Cir. 1986) .........................................................................21-22

*Ryan v. Volume Servs. America, Inc.*,
  No. 652970/2012 (MLS), 2012 N.Y. Misc. LEXIS 932 (N.Y.Sup.Ct. Mar. 7, 2013) ............... 21

*Shahriar v. Smith & Wollensky Rest. Group, Inc.*,
  659 F.3d 234 (2d Cir. 2011)............................................................................. 18

*Spicer v. Pier Sixty LLC*,
  269 F.R.D. 321 (S.D.N.Y. 2010) ....................................................................... 19

*Sukhnandan v. Royal Health Care of Long Island LLC*,
  No. 12 Civ. 4216 (RLE), 2014 WL 3778173 (S.D.N.Y. July 31, 2014)...............................7

*Sukhnandan v. Royal Health Care of Long Island LLC*,
   No. 12 Civ. 4216 (RLE), 2013 WL 4734818 (S.D.N.Y. Sept. 3, 2013) ..................... 10, 11, 19

*Teachers' Ret. Sys. of Louisiana v. A.C.L.N. Ltd.*,
   No. 01 Civ. 11814, 2004 WL 1087261 (S.D.N.Y. May 14, 2004)........................... 17

*Tiro v. Pub. House Invs., LLC*,
   288 F.R.D. 272 (S.D.N.Y. 2012) ........................................................................ 22

*Tiro v. Pub. House Invs., LLC*,
   Nos. 11 Civ. 7679 (CM) *et al*, 2013 WL 2254551 (S.D.N.Y. May 22, 2013) ........................ 10

*Toure v. Cent. Parking Sys. of N.Y.*,
   No. 05 Civ. 5237 (WHP), 2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007) ............................. 20

*In re Traffic Exec. Ass'n*,
   627 F.2d 631 (2d Cir. 1980)................................................................................ 10

*Velez v. Majik Cleaning Serv., Inc.*,
   No. 03 Civ. 8698 (SAS)(KNF),  2007 WL 7232783 (S.D.N.Y. June 25, 2007) ..................... 14

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005)................................................................................... 9

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004)................................................................................ 12

*Yuzary v. HSBC Bank USA, N.A.*,
   No. 12 Civ. 3693 (PGG), 2013 WL 1832181 (S.D.N.Y. Apr. 30, 2013) ..................... 10, 11, 20

**Statutes**......................................................................................................**Page Number**

Fair Labor Standards Act ("FLSA"). ................................................................... *passim*

Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 23(a) ................................... *passim*

Fed. R. Civ. P. 23(b)(3)....................................................................................... 21, 22

Fed. R. Civ. P. 23(c) ............................................................................................ 23, 24

Fed. R. Civ. P. 23(e) ............................................................................................ 8

Fed. R. Civ. P. 23(f) ............................................................................................ 15

Fed. R. Civ. P. 23(g) ............................................................................................ 23

Fed. R. Civ. P. 23(h) ............................................................................................ 7

Fed. R. Civ. P. 54(d)(2)........................................................................................ 7

New York Labor Law ("NYLL"). ........................................................................ *passim*

**Additional Authorities**........................................................................**Page Number**

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (4th ed. 2002)................. 8, 9, 17

## INTRODUCTION

Subject to Court approval, Plaintiffs Joanne Carpenter, Aixa Mercado, and Chelsea Moore (collectively, the "Named Plaintiffs") – tipped workers[1] previously employed at The Ainsworth and/or Ainsworth Park (collectively, the "Ainsworth Bars") by Paige Hospitality Group, LLC, Fondue 26, LLC, Park Avenue A, LLC, Matthew Shendell, and Dennis Bogart (collectively "Defendants") – have settled this wage and hour class and collective action for Six Hundred Eighty Seven Thousand Dollars ($687,000.00).  The proposed settlement resolves Plaintiffs' claims on a class-wide basis and satisfies all of the criteria for preliminary settlement approval under federal law.

With this motion, Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the Settlement Agreement and Release ("Settlement Agreement") attached as **Exhibit A** to the Declaration of Brian S. Schaffer ("Schaffer Decl.");[2] (2) for settlement purposes, conditionally certify the settlement class under Fed. R. Civ. P. 23; (3) appoint Fitapelli & Schaffer, LLP as class counsel; and (4) approve the proposed Notice of Class Action Lawsuit Settlement and Fairness Hearing ("Class Notice"), annexed as Exhibit A to the Settlement Agreement, and direct its distribution.

## PROCEDURAL BACKGROUND

### I.   OVERVIEW OF INVESTIGATION AND COMMENCEMENT OF THE ACTION

Before initiating the instant action, F&S conducted thorough investigations, which included factual investigation and legal research, in-depth interviews with individuals who worked at the Ainsworth and Ainsworth Park (collectively, the "Ainsworth Bars"), and reviewing documents provided by potential plaintiffs.  Schaffer Decl. ¶ 4.

On June 12, 2013, Alycia Carrillo ("Carrillo") commenced a Class and Collective action on behalf of herself and similarly situated tipped workers employed or previously employed at the

---

[1]    For the purposes of this motion, tipped workers are defined as individuals who have worked at the Ainsworth Bars in the server, bartender, runner and busser job classifications.

[2]    Unless otherwise indicated, all exhibits are attached to the Schaffer Decl.

Ainsworth Bars. *Id.* ¶ 5. Specifically, Carrillo asserted that Defendants violated the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") provisions regarding: (1) minimum wage; (2) overtime compensation; (3) spread-of-hours pay; (4) gratuities; (5) deductions from wage; (6) uniform-related expenses; (7) wage notices; and (8) wage statements. *Id.* With respect to the minimum wage and overtime claims, Carrillo alleged that Defendants failed to satisfy the requirements by which they could avail themselves of a tip credit under federal and state law. *Id.* In regards to the tip misappropriation claim, Carrillo alleged that Defendants impermissibly allocated a portion of the mandatory tip pools at the Ainsworth Bars to managerial employees and unlawfully retained portions of mandatory gratuities paid by customers hosting private events. *Id.* By July 24, 2013, ten additional individuals had joined the action by filing consent forms with the Court. *Id.* ¶ 6.

On July 30, 2013, a First Amended Class Action Complaint was filed, which replaced the original class representative (Carrillo) with the Named Plaintiffs. *Id.* ¶ 7. On September 16, 2013, Defendants filed individual Answers to the Amended Complaint, denying all material allegations. *Id.* ¶ 8. Subsequently, the parties appeared for an initial conference on September 25, 2013. *Id.* ¶ 9.

## II.    PROPOSED CERTIFICATION MOTION AND INITIAL DISCOVERY

Shortly after filing the Amended Complaint, F&S began preparing a motion for conditional certification pursuant to 29 U.S.C. § 216(b), which included interviewing the Named Plaintiffs and opt in Plaintiffs (collectively, "Plaintiffs"), obtaining supporting declarations, conducting extensive research, and drafting a memorandum of law in support. *Id.* ¶ 10. F&S also received and reviewed hundreds of documents from Plaintiffs regarding Defendants' wage and hour practices and corporate structure. *Id.* Prior to Plaintiffs' filing their motion, Defendants agreed to stipulate to conditional certification and entered into negotiations with Plaintiffs regarding the scope of the collective and the content of the FLSA notice. *Id.* ¶ 11. On November 11, 2013, the parties executed a stipulation conditionally certifying the collective action, which was so ordered by the

Court on November 19, 2013.  *Id.*  As part of the stipulation, the parties agreed that Defendants would provide Plaintiffs with personnel files for all individuals who opted into the case.  *Id.*

Shortly thereafter, Defendants produced a class list, and notice of the federal claims was issued to putative plaintiffs.  *Id.* ¶ 12.  Following the issuance of notice, an additional 54 individuals filed FLSA consents to participate in the case.  *Id.* ¶ 13.

The parties each served document requests and interrogatories in September 2013.  *Id.* ¶ 14. In response to Plaintiffs' requests, and in accordance with the parties' stipulation, Defendants disclosed over 3,000 pages of documents related to the collective, including payroll registers, time records, private event contracts, tip sheets, employee personnel files, and employee handbooks and service manuals.  *Id.*  As Defendants' discovery requests specifically stated that responses were required from all individuals who filed FLSA consents, F&S reached out to all Plaintiffs to inform them of their discovery obligations, set up meetings to draft and verify interrogatory responses, and make arrangements to receive relevant documents.  *Id.*  Consequently, F&S met and/or conferred with 52 Plaintiffs, each of whom completed responses and provided available documents.  *Id.* Additionally, F&S continued to meet with Plaintiffs regarding Defendants' time keeping practices, compensation policies and corporate structure, and Defendants' discovery production.  *Id.*

## III.    ADDITIONAL DISCOVERY AND SETTLEMENT CONFERENCES

Following a status conference on March 5, 2014, the parties continued to exchange discovery and began discussing settlement.  *Id.* ¶¶ 16, 17.  On May 15, 2014, the parties requested that the matter be referred to Magistrate Judge Dolinger for a settlement conference, and a settlement conference was scheduled shortly thereafter.  *Id.* ¶ 18.

In preparation for the settlement conference, Defendants supplemented their earlier document production with class-wide wage and hour data.  *Id.* ¶ 19.  Additionally, F&S engaged in significant work to prepare for the settlement conference.  *Id.* ¶ 20.  F&S continued to meet with

Plaintiffs regarding their hours worked and wages received, the Ainsworth Bars' practices re customer tips, private event gratuities, uniforms and meal credit deductions, the involvement of the individual Defendants in the operation of the Ainsworth Bars, the uniform operations of the Ainsworth Bars, and Defendants' document production.  *Id.*  F&S also reviewed and analyzed thousands of pages of documents produced by Plaintiffs and Defendants, and conducted extensive research regarding Plaintiffs' claims and Defendants' ability to fund a settlement or satisfy a judgment.  *Id.*  As a result of this work, F&S was able to prepare a comprehensive class-wide damages analysis, and evaluate the strengths and weaknesses of the class' claims.  *Id.*

On September 3, 2014, the parties participated in a half-day settlement conference with Judge Dolinger.  *Id.* ¶ 21.  At the settlement conference, Defendants argued that Class Members did not work the hours they claimed to have worked, that all individuals who participated in the tip pools at the Ainsworth Bars were tip eligible employees, that Defendants remitted all mandatory gratuities collected from customers hosting private events to eligible workers, and that any violations of the FLSA and NYLL were not willful or in bad faith.  *Id.*  Defendants also claimed that bussers and runners were paid above the full minimum wage and overtime rates, received all gratuities owed and were correctly compensated, and that the finances available to fund a class-wide settlement or judgment were limited.  *Id.*  While the parties were unable to reach a resolution, the settlement conference allowed the parties to better assess the strengths and weaknesses of their case, and the parties agreed to appear for a second settlement conference.  *Id.*

During the second settlement conference, on September 15, 2014, the parties continued to discuss the strengths and weaknesses of the case.  *Id.* ¶ 22.  Defendants also continued to insist that their finances were limited, and to that end, allowed F&S to review three years of personal and business tax returns.  *Id.*  After several additional hours of highly contested negotiations, the parties were ultimately able to agree in principal to a class wide settlement of $687,000.  *Id.*

- 4 -

Following the settlement conferences, the parties continued to negotiate the terms of the settlement until a final agreement was signed on December 9, 2014.  **Exhibit A ("Ex.") A**, Settlement Agreement.

## SUMMARY OF THE SETTLEMENT TERMS

### I.    THE SETTLEMENT FUND

The Settlement Agreement requires Defendants to pay a "Settlement Amount" of $687,000.  **Ex. A**, Settlement Agreement ¶ 3.1.  The Settlement Amount covers attorneys' fees and costs, class members' awards, service payments to Plaintiffs, and the claims administrator's fees. *Id.*  Defendants shall fund the Settlement Amount in two installments, each comprising one-half of the total Settlement Amount: (1) on the later of ten (10) days after the Effective Date or June 1, 2015; and (2) on or before June 1, 2016, provided that such date is at least 10 days following the Effective Date.  *Id.* ¶ 3.1(B), (C).

Within 21 days of the date on which the Court grants preliminary approval of the settlement, Defendants will provide the claims administrator with a list of the names, last known addresses, dates of employment, positions held, and social security numbers for all putative class members.  *Id.* ¶ 2.5(A).  The claims administrator will then mail the approved Class Notice to class members within 15 days of receiving the information from Defendants.  *Id.* ¶ 2.5(B).

Within 30 days of receipt of each settlement payment, provided the Final Effective Date has passed, the claims administrator will send settlement checks comprising one-half of: (a) each class member's individual settlement amount; (b) class counsel's approved fees and expenses; (c) approved service awards; and (d) the claims administrator's fee.  *Id.* ¶ 3.5(E), (F).

### II.   RELEASE

The Settlement Agreement provides that every class member who worked as a bartender and/or server, and who does not timely opt out of the settlement, will release Defendants from all

wage and hour law claims that were, or could have been, asserted in the litigation through the date that the Settlement Agreement was executed by the parties.  *Id.* ¶ 4.1(A).  Class members who worked as a bussers and/or runners will release Defendants from all claims under the Wage Theft Prevention Act from April 9, 2011 through the date of the execution of the Settlement Agreement.  *Id.* ¶ 4.1(B).

## III.   ELIGIBLE EMPLOYEES

The proposed class consists of all individuals who worked at the Ainsworth Bars in the Server, Bartender, Runner and Busser job classifications between June 12, 2007 and December 31, 2013, up to a maximum of 526 individuals.  *Id.* ¶ 1.15.

## IV.   ALLOCATION FORMULA

Each class member who does not opt out of the settlement will receive a proportional share of the Settlement Amount, which shall be distributed according to the following formula:

(a)   All Class Members who worked as bartenders and/or servers shall receive one (1) point for every week worked as a bartender and/or server prior to April 9, 2011.

(b)   All Class Members who worked as bartenders and/or servers shall receive two (2) points for every week worked as a bartender and/or server between April 9, 2011 and December 31, 2013.

(c)   All Class Members who worked as bussers and/or runners shall receive one (1) point for every week worked as a busser and/or runner between April 9, 2011 and December 31, 2013.

(d)   All Class Members who filed FLSA opt-in forms to join the Litigation shall receive one (1) point for each week worked during the FLSA limitations period prior to December 31, 2013.

(e)   The Net Settlement Fund will be divided by the aggregate number of points accrued by all of the Qualified Class Members who worked during the June 12, 2007 through December 31, 2013 period ("Point Value").

(f)   Each Qualified Class Member's total points will be multiplied by the Point Value to determine his or her Individual Settlement Amount.

*Id.* ¶ 3.5(B). Class members who worked as bussers and/or runners are being assigned less points because they are only releasing claims under the Wage Theft Prevention Act. Schaffer Decl. ¶ 29. Class members who filed FLSA consents are receiving additional points in recognition of the risks they incurred by joining the lawsuit and the fact that they affirmatively sought to protect their FLSA rights, including the right to obtain 100% liquidated damages in addition to their unpaid wages. *Id.*

## V.   ATTORNEYS' FEES AND LITIGATION COSTS

F&S will apply for thirty-three and one-third (33 1/3%) of the Settlement Amount as attorneys' fees. **Ex. A**, Settlement Agreement ¶ 3.3(A). This is a typical fee award in the Second Circuit. *See, e.g.*, *Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12 Civ. 4216 (RLE), 2014 WL 3778173, at *13 (S.D.N.Y. July 31, 2014) (finding class counsel's request for one-third of the settlement fund "reasonable and 'consistent with the norms of class litigation in this circuit'") (quoting *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452 (RLE), 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008)). F&S will also seek reimbursement of reasonable litigation costs and expenses from the Fund, not to exceed $3,000. **Ex. A**, Settlement Agreement ¶ 3.3(A). The Court need not rule on fees and costs now. F&S will file a formal motion for approval of fees and costs along with their motion for final approval of the settlement. *See* Fed. R. Civ. P. 23(h) & 54(d)(2). The Settlement Agreement is not conditioned on the award of attorneys' fees, and explicitly states that such award should be considered separately. **Ex. A**, Settlement Agreement ¶ 3.3(B).

## CLASS ACTION SETTLEMENT PROCEDURE

Courts have established a defined procedure and specific criteria for settlement approval in class action settlements that include three distinct steps:

1. Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval and certification of the settlement class;

2. Dissemination of mailed and/or published notice of settlement to all affected class members; and

    3.   A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*") §§ 11.22 *et seq.* (4th ed. 2002).  This process safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests.  With this motion, Plaintiffs request that the Court take the first step – granting preliminary approval of the Settlement Agreement, conditionally certifying the settlement class, appointing F&S as class counsel, and approving the proposed Class Notice and authorizing the claims administrator to send it.

    The parties respectfully submit the following proposed schedule for final resolution of this matter for the Court's consideration and approval:

1.   Within 21 days of the Court's Order granting preliminary approval, Defendants will provide the claims administrator with a list in electronic form of the names, last known addresses, dates of employment, positions held, and social security numbers for all putative class members (the "Class List").  Plaintiffs' counsel will also receive a copy of the Class List, excluding social security numbers.  **Ex. A**, Settlement Agreement ¶ 2.5(A).

2.   Within 15 days of Defendants' provision of the Class List, the claims administrator shall mail, via First Class United States mail, the Class Notice to all class members using each individual's last known address.  *Id.* ¶ 2.5(B).

3.   Class members will have 45 days from the date the Class Notice is mailed to opt out of the settlement or object to it.  *Id.* ¶¶ 2.6(A), 2.7(A).

4.   Plaintiffs will file a Motion for Judgment and Final Approval at least 14 days prior to the fairness hearing.  *Id.* ¶ 2.8.

5.   If the Court grants Plaintiffs' Motion for Judgment and Final Approval, the Court will issue a Final Order and Judgment.  If no party appeals the Court's Final Order and Judgment, the Effective Date will be 30 days following the issuance of the Final Order and Judgment.  If rehearing, reconsideration or appellate review is sought, the Effective Date shall be upon the Court's entry of a final order and judgment resolving any appeals.  *Id.* ¶ 1.9.

6.   The Settlement Amount shall be paid in two equal payments comprising one-half of the total Settlement Amount.  The first payment will be made no later than June 1, 2015, and the second payment will be made no later than June 1, 2016.  If the

Effective Date occurs after either or both of these dates, any affected payment(s) shall be delayed until 10 days after the Effective Date. *Id.* ¶ 3.1(B), (C).

7.        Within 30 days after receipt of each of the above-referenced settlement payments, provided the Effective Date has passed, the claims administrator shall send settlement checks comprising one-half of: (a) each class member's individual settlement payment; (b) class counsel's approved attorneys' fees and costs; (c) approved service awards; and (d) the claims administrator's fees. *Id.* ¶ 3.5(F).

## ARGUMENT

## I.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

The law favors compromise and settlement of class action suits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions."); *see also Newberg* § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). The approval of a proposed class action settlement is a matter of discretion for the trial court. *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995). "In exercising this discretion, courts should give weight to the parties' consensual decision to settle class action cases because they and their counsel are in unique positions to assess potential risks." *Monzon v. 103W77 Partners, LLC*, No. 13 Civ. 5951 (AT) *et al*, 2014 WL 6480557, at *1(S.D.N.Y. Oct. 15, 2014) (citations omitted).

As the first step in the settlement process, preliminary approval "simply allows notice to issue to the class and for Class Members to object to or opt-out of the settlement. After the notice period, the Court will be able to evaluate the settlement with the benefit of the Class Members' input." *Flynn v. New York Dolls Gentleman's Club*, No. 13 Civ. 6530 (PKC)(RLE),

2014 WL 4980380, at *1 (S.D.N.Y. Oct. 6, 2014).

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. *Tiro v. Pub. House Invs., LLC*, Nos. 11 Civ. 7679 (CM) *et al*, 2013 WL 2254551, at *1 (S.D.N.Y. May 22, 2013). Nevertheless, courts often grant preliminary settlement approval without requiring a hearing or a court appearance. *Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12 Civ. 4216 (RLE), 2013 WL 4734818, at *1 (S.D.N.Y. Sept. 3, 2013) (granting preliminary approval based on plaintiffs' memorandum of law, attorney declaration, and exhibits). To grant preliminary approval, the court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980).

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery. *Lovaglio v. W & E Hospitality Inc.*, No. 10 Civ. 7351 (LLS), 2012 WL 1890381, at *1 (S.D.N.Y. Mar. 12, 2012) (granting preliminary approval where settlement was "the result of extensive, arm's length negotiations by counsel well-versed in the prosecution and defense of wage and hour class and collective actions"). "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, Nos. 05 Civ. 10240 (CM) *et al.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007). "If the proposed settlement appears to fall within the range of possible approval, the court should order that the class members receive notice of the settlement." *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693 (PGG), 2013 WL 1832181, at *1 (S.D.N.Y. Apr. 30, 2013).

Courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere. *See, e.g., Id.* at *2 (endorsing early settlement of wage and hour class action); *Sukhnandan*, 2013 WL 4734818, *1 (early settlements should be encouraged when warranted); *Castagna v. Madison Square Garden, L.P.*, No. 09 Civ. 10211 (LTS)(HP), 2011 WL 2208614, at *10 (S.D.N.Y. June 7, 2011) (commending plaintiffs' counsel for negotiating early settlement).

**A.**     **The Settlement Is Fair, Reasonable, And Adequate**

In evaluating a class action settlement, courts in the Second Circuit consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). Although the Court need not evaluate the *Grinnell* factors in order to conduct its initial evaluation of the settlement, it may be useful for the Court to consider the criteria on which it will ultimately judge the settlement.

The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Id.* The *Grinnell* factors weigh in favor of approval of the Settlement Agreement and preliminary approval.

**1.**     <u>Litigation Through Trial Would Be Complex, Costly, And Long (*Grinnell* Factor 1).</u>

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay and ensure a speedy, risk-free recovery for the class. "Most

class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000).  This case is no exception, with approximately 526 class members and fact-intensive claims under both federal and state law.

Although there has been significant discovery, additional discovery would be required to establish liability and damages, including depositions of Plaintiffs, class members, Defendants, and Defendants' managers.  A fact-intensive trial would be necessary.  Preparing and putting on evidence at such a trial would consume tremendous amounts of time and resources and demand substantial judicial resources.  A trial on damages would be costly and would further defer closure. Any judgment would likely be appealed, thereby extending the duration of the litigation.  This settlement, on the other hand, makes monetary relief available to class members in a prompt and efficient manner.  Therefore, the first *Grinnell* factor weighs in favor of preliminary approval.

2.      The Reaction Of The Class Has Been Positive (*Grinnell* Factor 2).

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002).  Here, the Named Plaintiffs have expressed their approval of the settlement terms by signing the Settlement Agreement.  After notice issues and class members have had an opportunity to weigh in, the Court can more fully analyze this factor.

3.      Discovery Has Advanced Far Enough To Allow The Parties To Responsibly Resolve The Case (*Grinnell* Factor 3).

The parties have completed enough discovery to recommend settlement.  The pertinent question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001)) (internal quotation marks omitted); *see also Odom v.*

*Hazen Transport, Inc.*, 275 F.R.D. 400, 411 (W.D.N.Y. 2011) ("While the parties need not have engaged in extensive discovery, a sufficient factual investigation must have been conducted to afford the court the opportunity to "'intelligently [ ] make ... an appraisal' of the Settlement."). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement … but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *Austrian & German Bank*, 80 F. Supp. 2d at 176 (quoting *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y. 1998)).  The parties' discovery here meets this standard.

Plaintiffs obtained thousands of records from Defendants, including payroll registers, time records, private event contracts, tip sheets, employee personnel files, employee handbooks and service manuals, and tax records.  Schaffer Decl. ¶¶ 14, 22.  F&S also received substantial amounts of data and documents from Plaintiffs, including paystubs, W-2 Forms, schedules, tip sheets, employee handbooks and training manuals, and hundreds of emails.  *Id.* ¶¶ 4, 14.  Furthermore, the parties participated in two settlement conferences with Magistrate Judge Dolinger.  *Id.* ¶¶ 21, 22.

Based on these circumstances, the parties were well-equipped to evaluate the strengths and weaknesses of the case.  *See, e.g., Hanifin v Accurate Inventory and Calculating Serv., Inc.*, No. 11 Civ. 1510 (MAD)(ATB), 2014 WL 4352060, at *4 (N.D.N.Y. Aug. 20, 2014) ("The involvement of a magistrate judge also supports a finding that the settlement was procedurally fair.") (citation omitted); *Bodon v. Domino's Pizza, LLC*, No. 09 Civ. 2941 (SLT), 2014 WL 3605507, at *4 (E.D.N.Y. June 25, 2014) (recommending preliminary approval where the parties' settlement was reached after meaningful discovery and a settlement conference); *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, (S.D.N.Y. 2014) (finding settlement was substantively fair where, "at the settlement conference, counsel for the parties demonstrated a mastery of the evidence and the legal principles and zealously represented  their clients").  This factor also weighs in favor of preliminary approval.

4.      Plaintiffs Would Face Real Risks If The Case Proceeded (*Grinnell* Factors 4 and 5).

Although Plaintiffs' case is strong, it is not without risk.  "Litigation inherently involves risks."  *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997).  Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome."  *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698 (SAS)(KNF), 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007).  In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement."  *Austrian & German Bank*, 80 F. Supp. 2d at 177 (*quoting Marisol A. v. Giuliani*, 185 F.R.D. 152, 164 (S.D.N.Y. 1999)).

Given the fact-intensive nature of Plaintiffs' claims, a trial on the merits would involve significant risk.  For example, Plaintiffs would need to establish that class members' time sheets did not reflect their actual hours worked, that Defendants' failed to provide class members with proper notification of the tip credit under the FLSA and NYLL, that managerial employees were included in the Ainsworth Bars' tip pools and that such employees exercised meaningful control over tipped workers, and that Defendants required class members to purchase, wear and maintain mandatory uniforms that could not be worn as part of class members' regular wardrobes.  These issues would be heavily litigated and require a substantial amount of fact-intensive discovery.  While Plaintiffs believe that they could ultimately establish Defendants' liability, this would require significant factual development and favorable outcomes at trial and on appeal, both of which are inherently uncertain and lengthy.  The proposed settlement alleviates this uncertainty.  This factor therefore weighs in favor of preliminary approval.

5.      Establishing A Class And Maintaining It Through Trial Would Not
Be Simple (*Grinnell* Factor 6).

The risk of obtaining class certification and maintaining it through trial is also present. The Court has not yet certified the class under Rule 23, and such a determination would likely be reached only after another round of extensive briefing.   Defendants would likely argue, in connection with a Rule 23 motion, that individual questions preclude class certification.   If a class is certified, Defendants would likely seek permission to file an interlocutory appeal under Fed. R. Civ. P. 23(f).   Risk, expense, and delay permeate such a process.   Settlement eliminates this risk, expense, and delay.   This factor also favors preliminary approval.

6.      Defendants' Ability To Withstand A Greater Judgment Is Not
Assured (*Grinnell* Factor 7).

Defendants' counsel asserted during the parties' settlement negotiations that Defendants' finances were stretched and that Defendants could not pay more than the current settlement amount, and to that end, allowed F&S to review three years of personal and business tax returns.   Schaffer Decl. ¶¶ 21, 22.   Even if Defendants could afford to pay more, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair."   *Frank*, 228 F.R.D. at 186 (*quoting Austrian & German Bank*, 80 F. Supp. 2d at 178 n.9 (alterations and citation omitted)).   Here, the Settlement Agreement eliminates the risk of collection by requiring Defendants to: (a) fund the $687,000 Settlement Amount in two equal payments; (b) execute a Confession of Judgment, whereby the entire unpaid portion of the Settlement Amount will immediately become due in the event that Defendants default on a payment and fail to cure the default within 14 days; and (c) provide class counsel with a Personal Financial Statement within seven days of the Court's entry, if any, of the Confession of Judgment.   **Ex. A**, Settlement Agreement ¶¶ 3.1, 3.2. Accordingly, this factor also favors preliminary approval.

7.     The Settlement Fund Is Substantial In Light Of The Possible Recovery
And The Attendant Risks Of Litigation (*Grinnell* Factors 8 and 9).

The $687,000 settlement amount represents a good value given the risks of litigation and the collection risks discussed above, even though the recovery could be greater if Plaintiffs succeeded on all claims at trial and survived an appeal.  In F&S's estimation, the settlement represents a significant percentage of the recovery that Plaintiffs would have achieved had they prevailed on all of their claims and survived an appeal, and a substantial portion of what Defendants would be able to pay if faced with a judgment.  Schaffer Decl. ¶¶ 24, 25.

Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is more than reasonable.  "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."  *Grinnell Corp.*, 495 F.2d at 455 n.2.  "It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982); *see also Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423, at *12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million").

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'"  *Frank*, 228 F.R.D. at 186 (quoting *Austrian & German Bank*, 80 F. Supp. 2d at 178).  "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"  *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).  Moreover, when settlement assures immediate payment of substantial amounts to class members,

"even if it means sacrificing 'speculative payment of a hypothetically larger amount years down the road,'" settlement is reasonable under this factor.  *See Gilliam*, 2008 WL 782596, at *5 (*quoting Teachers' Ret. Sys. of Louisiana v. A.C.L.N. Ltd.*, No. 01 Civ. 11814, 2004 WL 1087261, at *5 (S.D.N.Y. May 14, 2004)).

## II.   CONDITIONAL CERTIFICATION OF THE RULE 23 SETTLEMENT CLASS IS APPROPRIATE.

Plaintiffs respectfully request that, pursuant to Paragraph 1.15 of the Settlement Agreement, the Court conditionally certify the following Fed. R. Civ. P.  23 class for settlement purposes:

> All individuals who have worked at the Ainsworth Bars in the Server, Bartender, Runner and Busser job classifications between June 12, 2007 and December 31, 2013.

As discussed below, the Class meets all of the requirements for class certification for settlement purposes, and Defendants do not oppose provisional certification for settlement purposes.  *See also Newberg* § 11.27 ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only."); *County of Suffolk v. Long Island Lighting Co*., 710 F. Supp. 1422, 1424 (E.D.N.Y. 1989) ("It is appropriate for the parties to a class action suit to negotiate a proposed settlement of the action prior to certification of the class."), *aff'd in part, rev'd in part on other grounds*, 907 F.2d 1295 (2d Cir. 1990).

Provisional settlement class certification and appointment of class counsel have several practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all class members of the terms of the proposed Settlement Agreement, and setting the date and time of the final approval hearing.  *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 790-92 (3d Cir. 1995) (noting practical purposes of provisionally certifying settlement class).

Under Rule 23(a), a class action may be maintained if all of the requirements of Rule 23(a) are met, as well as one of the requirements of Rule 23(b).  Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  Rule 23(b)(3) requires the court to find that (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Fed. R. Civ. P. 23(b)(3).  "In the Second Circuit, 'Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification.  *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006).  Moreover, "it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification."  *Gortat v. Capala Bros., Inc.*, 257 F.R.D. 353, 361 (E.D.N.Y. 2009).

### A.   Numerosity

Numerosity is satisfied when the class is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Numerosity is presumed where a putative class has forty or more members.  *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011) (citation omitted).  Plaintiffs easily satisfy the numerosity requirement – there are over 500 class members.  Schaffer Decl. ¶ 27.

### B.   Commonality

The proposed class also satisfies the commonality requirement of Fed. R. Civ. P. 23(a)(2), the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected

in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). The commonality requirement is satisfied where the injuries complained of by the plaintiffs allegedly resulted from the same practice or policy that allegedly injured or will injure the proposed class members. *See Daniels v. City of New York*, 198 F.R.D. 409, 417 (S.D.N.Y. 2001). Although the claims need not be identical, they must share common questions of fact or law. *Frank*, 228 F.R.D. at 181. There must be a "unifying thread" among the claims to warrant class certification. *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986). Nevertheless, courts construe the commonality requirement liberally, and generally hold that a single question of law or of fact will suffice. *See, e.g., Marisol v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997); *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 337 (S.D.N.Y. 2010) (stating that commonality is satisfied "if the class shares even one common question of law or fact").

This case involves several common factual and legal issues. Plaintiffs and class members all bring nearly identical claims arising from Defendants' alleged uniform violations of the FLSA and NYLL for failure to pay appropriate minimum wage, overtime compensation, spread-of-hours pay, gratuities, and uniform-related expenses, as well as Defendants' alleged failure to provide proper wage notices and wage statements. *See Flores v. Hanover, LLC*, No. 13 Civ. 5184 (AJP), 2014 WL 632189, at *3 (S.D.N.Y. Feb. 18, 2014) ("Plaintiffs … and the Class Members share common issues of fact and law, including whether Defendants unlawfully took a 'tip credit' and paid less than the minimum wage; failed to pay proper premium overtime compensation, failed to pay spread-of-hours pay, [and] misappropriated tips by unlawfully distributing a portion to non-tip eligible workers.") (citing *Lovaglio,* 2012 WL 1890381, at *1; *Sukhnandan*, 2013 WL 4734818, at *3).

### C.   **Typicality**

Rule 23(a)(3)'s typicality requirement is also satisfied. "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those

of all class members." *Frank*, 228 F.R.D. at 182.  Typicality is satisfied where "[p]laintiffs' claims … [arose] from the same factual and legal circumstances that form[ed] the bases of the [c]lass [m]embers' claims" *Yuzary*, 2013 WL 1832181, at *3.  "Minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class.  *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).  Rather, the claims of the named plaintiff and the class "only need to share the same essential characteristics, and need not be identical."  *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008) (citation omitted).

Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of the class members' claims.  Defendants' alleged violations of law were the result of the same company policy and pattern or practice of failing to properly compensate Plaintiffs and class members, and failing to furnish Plaintiffs and class members with required wage notices and wage statements.  Plaintiffs also claim the same injuries as do class members – that Defendants failed to compensate them in accordance with the FLSA and NYLL.  Accordingly, Plaintiffs satisfy the typicality requirement.  *See Hernandez v. Anjost Corp.*, No. 11 Civ. 1531 (AT), 2013 WL 4145952, at *3 (S.D.N.Y. Aug. 14, 2013) (typicality satisfied where "Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of the Class Members' claims"); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 616 (S.D.N.Y. 2012) (same).

### D.     Adequacy Of The Named Plaintiffs

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The adequacy requirement exists to ensure that the named representatives will have an interest in vigorously pursuing the claims of the class, and … have no interests antagonistic to the interests of other class members."  *Toure v. Cent. Parking Sys. of N.Y.*, No. 05 Civ. 5237 (WHP), 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007)

(quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)) (internal quotation marks omitted).  "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status."  *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659 (DLI)(MDG), 2007 WL 1580080, at *6 (E.D.N.Y. May 29, 2007) (quoting *Martens*, 181 F.R.D. at 259).

Given that there is no evidence that Plaintiffs' and class members' interests are at odds, the adequacy requirement is met.  *See O'Dell v. AMF Bowling Ctrs., Inc.*, No. 09 Civ. 759 (DLC), 2009 WL 6583142, at *2 (S.D.N.Y. Sept. 18, 2009) (finding that the plaintiffs satisfied Fed. R. Civ. P. 23(a)(4) "because Plaintiffs' interests [were] not antagonistic or at odds with class members").  In addition, Plaintiffs are represented by counsel who "are experienced and well-qualified employment lawyers and class action lawyers and have particular expertise in prosecuting and settling wage and hour class actions."  *Ryan v. Volume Servs. America, Inc.*, No. 652970/2012 (MLS), 2012 N.Y. Misc. LEXIS 932 (N.Y.Sup.Ct. Mar. 7, 2013).

**E.    Certification Is Proper Under Rule 23(b)(3).**

1.    Common Questions Predominate

To establish predominance, Plaintiffs must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof."  *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 108 (2d Cir. 2007).  The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues."  *Id.* at 139.  Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied.  *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).  Courts have found a plaintiff's satisfaction of the typicality requirement of Rule 23(a) is perhaps the best indicator that Rule 23(b)(3) has been satisfied.  *See, e.g., Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) (stating that satisfaction

of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement").

Here, class members' common factual allegations and legal theory – that Defendants violated federal and state wage and hour law – predominate over any variations among class members. *See Tiro v. Pub. House Invs., LLC*, 288 F.R.D. 272, 281 (S.D.N.Y. 2012) (finding the predominance standard met where the overarching issue was "whether Defendants failed to pay their employees at each restaurant in accordance with the law").

2. A Class Action Is A Superior Mechanism.

The second part of the Rule 23(b)(3) analysis compares whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."). Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to inquiry into the superiority of a class action, including: the class members' interests in individually controlling the prosecution or defense of separate actions; whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3).

Here, Plaintiffs and class members have limited financial resources with which to prosecute individual actions. Concentrating the litigation in this Court is desirable because much of the allegedly wrongful conduct occurred within its jurisdiction, and Defendants' businesses are located here. The class device will achieve economies of scale, conserve judicial resources, preserve public confidence in the integrity of the judicial system by avoiding the waste and delay of repetitive proceedings, and prevent inconsistent adjudications of similar claims. *See, e.g., Morris*, 859 F. Supp. 2d at 617; *Damassia*, 250 F.R.D. at 161, 164. A class action is the best

mechanism to fairly and efficiently resolve class members' claims.

## III.   F&S SHOULD BE APPOINTED AS CLASS COUNSEL.

F&S should be appointed as Class Counsel.  Rule 23(g), which governs the appointment of class counsel for a certified class, sets forth four criteria courts must consider in evaluating the adequacy of proposed counsel: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(A).

F&S meets all relevant criteria.  F&S did substantial work identifying, investigating, prosecuting and settling the claims, has substantial experience prosecuting and settling wage and hour class actions, are well-versed in wage and hour and class action law, and are well-qualified to represent the interests of the class.  Schaffer Decl. ¶¶ 32-34.  Courts have found F&S to be adequate class counsel in wage and hour class and collective actions.  *See, e.g., Monzon*, 2014 WL 6480557, at *4 (collecting cases and stating that the work F&S "performed both in litigating and settling this case demonstrates their skill and commitment to representing the class' interests").

## IV.   THE PROPOSED CLASS NOTICE IS APPROPRIATE

The content of the proposed Class Notice, which is annexed to the Settlement Agreement as Exhibit A, fully complies with due process and Fed. R. Civ. P. 23.  Pursuant to Rule 23(c)(2)(B), the notice must provide:

> [T]he best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The notice must concisely and clearly state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through counsel if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The Class Notice satisfies each of these requirements.  It also explains the basis on which each class member's award was determined, the approximate amount of the class member's award, the allocation of attorneys' fees and costs, and provides specific information regarding the date, time and place of the final approval hearing, and how to object to or exclude oneself from the settlement.  This information is adequate to put class members on notice of the proposed settlement and is well within the requirements of Rule 23(c)(2)(B).  *See, e.g., In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 52 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally").  Courts in this district have approved class notices that are very similar to those proposed by Plaintiffs.  *See, e.g., Monzon*, 2014 WL 6480557, at *5 (collecting cases).

The Settlement Agreement provides that the claims administrator will mail the Class Notice to the last known address of each class member within 36 days of the entry of the Court's order granting preliminary approval.  **Ex. A**, Settlement Agreement ¶¶ 2.5(A), (B).  The claims administrator will take all reasonable steps to obtain the correct address of any class members for whom the mailed version of the Class Notice are returned as undeliverable.  *Id.*  Class members will then have 45 days to opt out of or object to the settlement.  *Id.* ¶¶ 2.6(A), 2.7(A).

## V.    PLAINTIFFS WILL SEEK APPROVAL OF THE FLSA SETTLEMENT

Plaintiffs will seek approval of the settlement of the FLSA claims separately from the Rule 23 claims.  FLSA claims are brought as a "collective action," in which employees must affirmatively "opt-in" to the litigation, unlike the procedure under Rule 23.  *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001) ("[t]here is no opt-in requirement, analogous to the procedure authorized by the FLSA, under the [NYLL]").  Given that, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions.  *McKenna v. Champion Intern. Corp.*, 747 F.2d 1211, 1213

(8th Cir. 1984); *see McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328, at *6 (S.D.N.Y. Mar. 3, 2010) ("The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement."). Accordingly, the high standard for approval of a class action settlement under Rule 23 does not apply to an FLSA settlement. When Plaintiffs file their Motion for Final Approval of the Settlement, they will seek approval of the FLSA settlement.

<u>**CONCLUSION**</u>

For the reasons set forth above, Plaintiffs respectfully request that the Court preliminarily approve the settlement, conditionally certify the settlement class, appoint Plaintiffs' Counsel as class counsel, approve the Class Notice, and enter the proposed Order.


Dated: New York, New York
        December 10, 2014

                                          Respectfully submitted,

                                          /s/ Brian S. Schaffer
                                          Brian S. Schaffer

                                          **FITAPELLI & SCHAFFER, LLP**
                                          Brian S. Schaffer
                                          Eric J. Gitig
                                          475 Park Avenue South, 12th Floor
                                          New York, New York 10016
                                          Telephone: (212) 300-0375

                                          *Attorneys for Plaintiffs and*
                                          *the Putative Class*