# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JOANNE CARPENTER, AIXA MERCADO, and
CHELSEA MOORE, on behalf of themselves and
all others similarly situated,

         Plaintiffs,

   v.

PAIGE HOSPITALITY GROUP, LLC, FONDUE
26, LLC, PARK AVENUE A, LLC, MATTHEW
SHENDELL and DENNIS BOGART,

         Defendants.

Case No.: 13-cv-4009 (GBD)

**SETTLEMENT AGREEMENT**
**AND RELEASE**

   This Settlement Agreement and Release (the "Agreement") is entered into by and between Plaintiffs (as hereinafter defined) and the class of individuals that they seek to represent (as hereinafter defined) and Defendants (as hereinafter defined) (together, "the Parties").

## RECITALS

   WHEREAS, Plaintiffs Joanne Carpenter, Aixa Mercado and Chelsea Moore filed an FLSA Collective Action and Rule 23 Class Action Complaint on or about June 12, 2013, and an Amended Complaint on or about July 30, 2013 (collectively "*Complaint*");

   WHEREAS, the Complaint asserted class action claims under the New York Labor Law and collective action claims under the Fair Labor Standards Act and sought recovery of, among other things, unpaid minimum wages, unpaid overtime, unpaid spread-of-hours compensation, unpaid tips, unlawful deductions, statutory penalties, liquidated damages, and attorneys' fees and costs;

   WHEREAS, Defendants denied and continue to deny all of the allegations made by Plaintiffs in the Litigation and have denied and continue to deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nonetheless, without admitting or conceding any liability or damages, Defendants have agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense and uncertainty of continuing the Litigation;

   WHEREAS, the Parties have engaged in substantial discovery, including but not limited to reviewing thousands of documents exchanged by the Parties, and analyzing personnel documents including wage notices, time and payroll records and special event contracts;

   WHEREAS, the Parties participated in two settlement conferences before Magistrate Judge Michael H. Dolinger on September 3, 2014 and September 15, 2014, during which a settlement was reached.

WHEREAS, based upon their analysis and their evaluation of a number of factors, and recognizing the substantial risks of continued litigation with respect to certain claims, including the possibility that the Litigation, if not settled now, might result in a recovery that is less favorable to the Plaintiffs and Class Members, and that would not occur for several years, Class Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Class Members;

WHEREAS, this Agreement is a binding agreement and contains all material agreed-upon terms for the parties to seek a full and final settlement of the litigation.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Litigation on the following terms and conditions:

## 1.     DEFINITIONS

The defined terms set forth herein shall have the meanings ascribed to them below.

1.1     **Agreement.**  "Agreement" shall mean this Joint Stipulation of Settlement and Release.

1.2     **Claims Administrator.**  "Claims Administrator" shall mean Angeion Group.

1.3     **Class Counsel.**  "Class Counsel" shall mean Fitapelli & Schaffer, LLP.

1.4     **Class Members.**  "Class Members" shall mean all FLSA Class Members and all Rule 23 Class Members, as defined below, up to a maximum of 526 individuals.

1.5     **Court.**  "Court" shall mean the United States District Court for the Southern District of New York.

1.6     **Covered Period.**  "Covered Period" shall mean the period from June 12, 2007 through December 31, 2013.

1.7     **Defendants.**  "Defendants" shall mean Matthew Shendell, Dennis Bogart, Paige Hospitality Group, LLC, Fondue 26, LLC and Park Avenue A, LLC, including all parents, subsidiaries, predecessors, successors and related entities, employees, and officers, shareholders, members, partners, owners, or any individual with any ownership or management interest, including whether acting in their official or individual capacity.

1.8     **Defendants' Counsel.**  "Defendants' Counsel" shall mean Jackson Lewis P.C.  For the purposes of providing any notices required under this Agreement, Defendants' Counsel shall refer to Felice B. Ekelman, Esq. and Adam S. Gross, Esq. of Jackson Lewis P.C.

1.9     **Effective; Effective Date.**  The "Effective Date" is the date on which this Agreement becomes effective, which shall mean the later of (a) thirty (30) days following the Court's Order Granting Final Approval of the settlement if no appeal is taken of the final approval order, or (b) the Court's entry of a final order and judgment after resolving any appeals.

1.10    **Escrow Account.** "Escrow Account" shall mean the interest-bearing account(s) created and controlled by the Claims Administrator.

1.11    **Fairness Hearing.** "Fairness Hearing" shall mean the hearing on the Motion for Judgment and Final Approval.

1.12    **FLSA Class Member.** "FLSA Class Members" shall consist of all individuals in the Server and Bartender job classifications who were employed during the period three years prior to opting in to the Litigation.

1.13    **Litigation.** "Litigation" shall mean *Carpenter, et al., v. Paige Hospitality Group, LLC, et al.*, 13-cv-4009 pending in the United States District Court for the Southern District of New York.

1.14    **Net Settlement Fund.** "Net Settlement Fund" shall mean the Settlement Fund less service awards, settlement administration fees, approved attorneys' fees and costs, incentive payments, and any other costs of administration of the settlement. Defendants' obligation to pay payroll taxes are separate from the Net Settlement Fund.

1.15    **Rule 23 Class; Rule 23 Class Members**. "Rule 23 Class" shall mean all individuals in the Server, Bartender, Runner and Busser job classifications between June 12, 2007 and December 31, 2013, except that any individual who timely submits an exclusion request shall not be included in the Rule 23 Class. A member of the Rule 23 Class is a "Rule 23 Class Member."

1.16    **Order Granting Final Approval**. "Order Granting Final Approval" shall mean the final Order entered by the Court after the Fairness Hearing.

1.17    **Order Granting Preliminary Approval**. "Order Granting Preliminary Approval" shall mean the Order entered by the Court preliminarily approving, *inter alia*, the terms and conditions of this Agreement, the manner and timing of providing notice to the Class, and the time period for opt-outs and objections.

1.18    **Parties.** "Parties" shall mean Plaintiffs and Defendants.

1.19    **Named Plaintiffs.** "Named Plaintiffs" shall refer to Joanne Carpenter, Aixa Mercado and Chelsea Moore and shall also include any and all of their representatives, heirs, administrators, executors, beneficiaries, agents, and assignees of such individuals, as applicable and without limitation.

1.20    **Original Named Plaintiff.** "Original Named Plaintiff" shall refer to Alycia Carrillo and shall also include any and all of her representatives, heirs, administrators, executors, beneficiaries, agents, and assignees of such individuals, as applicable and without limitation.

1.21    **Qualified Class Member.** "Qualified Class Member" shall mean Class Members who do not opt out pursuant to Section 2.6 of this Agreement.

1.22   **Qualified Settlement Fund or QSF.**  "Qualified Settlement Fund" or "QSF" means the account established by the Settlement Claims Administrator for the Settlement Amount paid by Defendants.  The QSF will be controlled by the Settlement Claims Administrator subject to the terms of this Agreement and the Court's Orders for Preliminary Approval and Final Approval.  Interest earned on the QSF will become part of the Net Settlement Fund.

1.23   **Releasees.**  "Releasees" shall mean Defendants, as defined herein, their respective affiliates, subsidiaries, successors and all other related entities, including but not limited to all of their incumbent and former officers, directors, owners, members, managers, shareholders, investors, agents, attorneys, employees, fiduciaries, successors, assigns, and representatives, in their individual and/or representative capacities.

1.24   **Settlement Amount.**  "Settlement Amount" shall mean $687,000.00, plus any interest accrued as provided in Section 3.1(A).

2.   **APPROVAL AND CLASS NOTICE**

2.1   **Retention of Claims Administrator.**  Within 10 calendar days after the execution of this Agreement, Plaintiffs' counsel shall select, with Defendants' consent, a Claims Administrator to administer the settlement process.  The Claims Administrator shall be responsible for mailing the notice, calculating Class Members' share of the Net Settlement Fund, and cutting and mailing checks to Qualified Class Members as provided herein.  The Parties agree to cooperate with the Claims Administrator and assist it in any way possible in administering the Settlement.  The Claims Administrator's fees shall be paid from the Settlement Amount.

2.2   **Preliminary Approval by the Court.**  Within thirty (30) days of the execution of this Agreement, Plaintiffs will submit to the Court a Motion for Conditional Certification of the Settlement Class and for Preliminary Approval of the Class Action Settlement ("Preliminary Approval Motion").   In connection with the Preliminary Approval Motion, Plaintiffs will submit to the Court, among other things: (a) a proposed Notice of Settlement of the Class Action Lawsuit and Fairness Hearing which is appended hereto as Exhibit A, (b) a proposed Order Granting Preliminary Approval and certifying the New York Class pursuant to Fed. R. Civ. P. 23; and (c) a Memorandum of Law in support of the Motion for Preliminary Approval.  Prior to submission, Defendants will have an opportunity to review and provide comments relating to the Preliminary Approval Motion. The Parties will meet and confer in good faith to draft the Class Notice and Order granting preliminary approval, and both Parties will have the right to approve these submissions prior to their being filed with the Court.  The Preliminary Approval Motion will include the findings required by Fed. R. Civ. P. 23(a) and 23(b)(3) and will seek the setting of dates for opt-outs, objections, and a Fairness Hearing.  Defendants will not oppose the Preliminary Approval Motion.

2.3   **Denial of Preliminary Approval.**  If the Court denies the Motion for Preliminary Approval, then the Parties jointly agree to seek reconsideration of the ruling or seek Court approval of a renegotiated settlement addressing the issues raised by the Court.

Should reconsideration and/or the Parties' attempt to secure Court approval of a renegotiated settlement be denied, the case will proceed as if no settlement had been attempted, and Defendants retain the right to contest whether this case should be maintained as a class action or collective action, and to contest the merits of the claims being asserted by Plaintiffs in this Litigation.  In such a case, the Parties will negotiate and submit for Court approval a revised case management schedule.

2.4   **Final Order and Judgment from the Court.**  The Parties will seek to obtain from the Court, as a condition of settlement, a Final Order and Judgment in a form to be agreed upon by the Parties.  The proposed Final Order and Judgment will, among other things: (a) finally certify the Class for purposes of settlement, (b) enter Judgment in accordance with this Agreement, (c) approve the settlement as fair, adequate, reasonable, and binding on all Class Members who have not timely opted out pursuant to Section 2.6, (d) dismiss the Litigation with prejudice, (e) enter an order permanently enjoining all Class Members who do not opt out from pursuing and/or seeking to reopen claims that have been released by this Agreement and by the FLSA consents to join filed in connection with this lawsuit to date, and (f) incorporate the terms of this Settlement and Release.  Prior to submission, Defendants will have an opportunity to review and provide comments relating to the Motion for Judgment and Final Approval. The Parties will meet and confer in good faith to draft the proposed Order of Final Approval, and both Parties will have the right to approve this submission prior to it being filed with the Court.

2.5   **Class Notice**

A.   Within twenty one (21) days following the date on which the Court grants Preliminary Approval, Defendants will provide the Claims Administrator with a list, in electronic form, of the names of each Class Member who worked during the Covered Period and their last known address, dates of employment, positions held and social security number.  Plaintiffs' counsel will be provided with all such information, excluding social security numbers.

B.   Within 15 days of Defendants' provision of the information set forth in Section 2.5(A) to the Claims Administrator, the Claims Administrator shall mail, via First Class United States mail, postage prepaid, the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing in the form appended hereto as Exhibit A to all Class Members, using each individual's last known address as recorded in Defendants' records.  The Claims Administrator shall take all reasonable steps to obtain the correct address of any Class Member for whom the notice is returned by the post office as undeliverable, including using social security numbers to obtain better address information, and shall attempt re-mailings as described below.  Defendants' Counsel and Class Counsel have the right to make inquiries and receive any information from the Claims Administrator related to the claims administration process.

C.   If any Notices are returned to the Claims Administrator as undeliverable, the Claims Administrator will attempt one re-mailing per Class Member.  The Claims Administrator shall, within 10 calendar days after the first mailing of the Notice,

notify Class Counsel and Defendants' Counsel of the precise date of the end of the Opt-Out Period.

D.    The Claims Administrator shall provide the Parties with weekly summaries as to the status of Notice mailings including the number of Notices which were re-mailed, the number of successful and unsuccessful mailings, and the number of Class Members who have opted-out.

**2.6**    **Class Member Opt-Out.**

A.    Any Class Member may request exclusion from the Class by "opting out."  Any Class Member who chooses to do so must mail a written, signed statement to the Claims Administrator that he or she is opting out of the Settlement ("Opt-Out Statement").   The Opt-Out Statement must contain the name, address and telephone number of the Class Member to be valid.  It must also contain the words "I elect to exclude myself from the settlement in *Carpenter, et al., v. Paige Hospitality Group, LLC, et al.*, 13-cv-4009" in order to be valid.  To be effective, such Opt-Out Statement must also be sent via mail and postmarked by a date certain to be specified on the Notice of Proposed Class Action Lawsuit and Fairness Hearing, which will be 45 calendar days after the date on which the Claims Administrator mails the Notice.  The 45-day period will begin to run from the first mailing, except for those Class Members whose first mailing was returned to the Claims Administrator as undeliverable, in which case the 45-day period for any such Class Member will begin to run from the date of the second mailing to such Class Member, unless another period is set by the Court.  The Claims Administrator shall not attempt more than one supplemental mailing of the Notice.  The end of the "Opt-Out Period" shall be 45 days after the last day on which the Claims Administrator makes a mailing to a Class Member, but in any case no later than 7 calendar days before the date of the Fairness Hearing.  The Claims Administrator shall, within 10 calendar days after the last day on which it makes such a mailing, notify Class Counsel and Defendants' Counsel of the precise date of the end of the Opt-Out Period.

B.    The Claims Administrator shall stamp the postmark date on the original of each Opt-Out Statement that it receives and shall serve copies of each Statement on Class Counsel and Defendants' Counsel not later than 3 calendar days after receipt thereof.  The Claims Administrator shall, within 24 hours of the end of the Opt-Out Period, send a final list of all Opt-Out Statements to Class Counsel and Defendants' Counsel.   The Claims Administrator shall retain the stamped originals of all Opt-Out Statements and originals of all envelopes accompanying Opt-Out Statements in its files until such time as the Claims Administrator is relieved of its duties and responsibilities under this Stipulation.

C.    Defendants shall have the right to revoke this agreement in the event that 15% or more of the Class Members file Opt-Out Statements by the end of the Opt-Out Period.  If Defendants wish to exercise this right, they must do so by written communication to Class Counsel, received by Class Counsel no later than ten (10)

calendar days after the end of the Opt-Out Period, so long as the Claims Administrator has provided timely notice of the Opt-Out statements.

2.7   **Objections to Settlement.**

   A.   Class Members who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing.  To be considered, such statement must be mailed to the Claims Administrator by a date certain, to be specified on the Notice of Proposed Class Action Lawsuit and Fairness Hearing, which shall be 45 calendar days after the Claims Administrator mails the Notice.   The statement must contain the name, address and telephone number of the Class Member to be valid.  It must also contain the words "I object to the settlement in *Carpenter, et al., v. Paige Hospitality Group, LLC, et al.*, 13-cv-4009," and set forth the reasons for the objection.  The Claims Administrator shall stamp the date received on the original objection and send copies of each objection to Class Counsel and Defendants' Counsel not later than 3 calendar days after receipt thereof.  The Claims Administrator shall also file the date-stamped originals of any and all objections with the Clerk of Court within 3 calendar days after the end of the Opt-Out period.

   B.   An objector also has the right to appear at the Fairness Hearing either in person or through counsel hired by the objector.  An objector who wishes to appear at the Fairness Hearing must state his or her intention to do so at the time he/she submits his/her written objections.  An objector may withdraw his/her objections at any time.  Any Class Member who has requested exclusion may not submit objections to the settlement.

   C.   The Parties may file with the Court written responses to any objections no later than 7 calendar days before the Fairness Hearing.

2.8   **Motion for Judgment and Final Approval.**  No later than 14 calendar days before the Fairness Hearing, Plaintiffs will submit a Motion for Judgment and Final Approval.  The Fairness Hearing shall be held at the Court's convenience.

2.9   **Entry of Judgment.**  At the Fairness Hearing, the Parties will request that the Court, among other things, (a) finally certify the Class for purposes of settlement, (b) enter Judgment in accordance with this Agreement, (c) approve the settlement as fair, adequate, reasonable, and binding on all Qualified Class Members who did not timely opt-out, (d) Order the Claims Administrator to distribute settlement checks to class members, service awards, if any, and attorneys' fees and costs, (e) Order the dismissal with prejudice of all claims asserted in the litigation that are released herein, including the claims of all Class Members who did not opt-out, (f) incorporate the terms of this Settlement and Release, and (g) retain jurisdiction as necessary.

2.10   **Effect of Failure to Grant Final Approval.**  In the event the Court does not enter Judgment in accordance with this Agreement, or such Judgment does not become Final as defined herein, the Parties agree to proceed as follows.  The Parties jointly agree to (a)

seek reconsideration of the decision denying entry of Judgment, or (b) attempt to renegotiate the settlement to address the issues raised by the Court and seek Court approval of the renegotiated settlement.  In the event any reconsideration is denied, or a mutually-agreed-upon settlement is not approved:

A.      The Litigation will proceed as if no settlement had been attempted.  In that event, the class certified for purposes of settlement shall be decertified, and Defendants retain the right to contest whether this Litigation should be maintained as a class action or collective action, and to contest the merits of the claims being asserted by Plaintiffs in this action.

B.      The Court will provide notice to Class Members that the Agreement did not receive final approval and that, as a result, no payments will be made to Class Members under the Agreement.  Such notice shall be mailed by the Claims Administrator via First Class United States Mail, postage prepaid, to the last address used by the Claims Administrator in mailing the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing.

## 3.      SETTLEMENT TERMS

### 3.1     Settlement Amount.

A.      Defendants agree to pay a Settlement Amount of Six Hundred Eighty Seven Thousand Dollars and Zero Cents ($687,000.00), which shall resolve and satisfy: (a) Court-approved attorneys' fees and costs; (b) all amounts to be paid to Class Members; (c) Court-approved service payments to Plaintiffs; (d) the Claims Administrator's fees; and (e) any fees associated with investing and liquidating the Settlement Amount.  Defendants will make payment of the Settlement Amount in two separate installments.  Defendants must pay their share of payroll taxes in addition to the Settlement amount of $687,000.00.  Defendants will pay their share of payroll taxes directly to the Claims Administrator.

B.      Defendants shall cause the First Installment of the Settlement Amount, equal to Three Hundred Forty Three Thousand Five Hundred Dollars and Zero Cents ($343,500.00), to be paid on the later of ten (10) days after the Effective Date or June 1, 2015.  The Claims Administrator shall deposit the First Installment into the interest bearing Escrow Account.  Interest accrued from the Escrow Account, net of taxes and any fees associated with investing such amount, shall immediately be added to and become part of the Net Settlement Fund.

C.      The Second Installment of the Settlement Amount shall be comprised of (1) all amounts retained by the Claims Administrator in escrow following the distribution of the First Installment of the Qualified Settlement Fund ("First Installment Remainder") and (2) an additional amount to be paid by Defendants equaling the total of Three Hundred Forty Three Thousand Five Hundred Dollars and Zero Cents ($343,500.00), less the First Installment Remainder.  Defendants shall cause the Second Installment of the Settlement Amount to be paid to the

Claims Administrator by June 1, 2016 (provided that such date is at least 10 days following the Effective Date). The Claims Administrator shall deposit the Second Installment into the interest bearing Escrow Account. Interest accrued from the Escrow Account, net of taxes and any fees associated with investing such amount, shall immediately be added to and become part of the Net Settlement Fund.

3.2 **Confession of Judgment.**

A.      Contemporaneous with Defendants delivering a signed copy of this Agreement to Plaintiffs' counsel, Defendants shall deliver to Plaintiffs' Counsel an original Affidavit of Confession of Judgment executed by Matthew Shendell and Dennis Bogart on behalf of themselves, Paige Hospitality Group, LLC, Fondue 26, LLC and Park Avenue A, LLC, substantially in the form of Exhibit B, attached hereto.

B.      In the event Defendants fail to timely pay one or both of the two installments described in Section 3.1 above, Plaintiffs and the Class shall be entitled to commence a collection proceeding against Defendants in the United States District Court for the Southern District of New York after first giving notice of default (said notice of default to be served by regular mail and/or email at the offices of Defendants' counsel, Felice B. Ekelman, Esq., Jackson Lewis P.C., 666 Third Avenue, New York, New York 10017, ekelmanf@jacksonlewis.com), and further providing a fourteen (14) day right to cure such default. In the event Defendants fail to cure within fourteen (14) days, Plaintiffs and the Class shall be permitted to file and enter the Affidavit of Confession of Judgment for any defaulted installment payment(s), along with all attorneys' fees and costs incurred in entering and enforcing the judgment, and interest on the judgment as provided in 28 U.S.C. § 1961, but less any payments previously paid by Defendants to Plaintiffs pursuant to the terms of this Agreement.

C.      Plaintiffs and the Class agree that this Confession of Judgment shall be held in escrow by Plaintiffs' counsel and shall not be filed in any court unless and until Defendants fail to cure a default as set forth above. Upon full payment of the total Settlement Amount, Plaintiffs and the Class, by and through their attorneys, shall return the original Confession of Judgment to counsel for Defendants and they shall not retain any copies thereof.

D.      The Confession of Judgment is given solely to secure Plaintiffs and the Class in the installment payments of the Settlement Amount as agreed to herein.

E.      In the event the Confession of Judgment is filed in accordance with Section 3.2(B) above, Defendants shall be required to provide Plaintiffs' counsel with a Personal Financial Statement ("PFS") within seven (7) days of the Court's entry of the Confession of Judgment. The PFS shall include the following financial information, if applicable: (a) all personal and corporate checking, savings, and money market account numbers to which they are signatories; (b) all brokerage, stock, bond and/or mutual fund accounts to which they are signatories; (c) a list of all real properties in which they have an ownership interest; (d) a list of all

corporations in which they have an ownership interest; and (e) a list of all automobiles in which they have an ownership interest.

3.3     **Settlement Amount Payable as Attorneys' Fees and Costs.**

A.     Prior to the Fairness Hearing, Class Counsel shall petition the Court for no more than one-third of the Settlement Amount as an award of attorneys' fees.  In addition, Class Counsel shall also seek reimbursement of reasonable litigation costs and expenses (up to $3,000.00) from the Settlement Amount.  Defendants will not oppose such applications.

B.     The substance of Class Counsel's application for attorneys' fees and costs is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation.  The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Judgment and Final Approval.  Any monies sought by Class Counsel for attorneys' fees not approved by the Court shall be returned to the QSF and will be distributed pro-rata to eligible Class Members.

C.     The attorneys' fees and costs shall be paid from the QSF in two installments at the times the payments to Participating Class Members are mailed.

3.4     **Service Payments to Named Plaintiffs and Original Named Plaintiff.**  The Named Plaintiffs Joanna Carpenter, Aixa Mercado and Chelsea Moore will apply to the Court to receive $10,000.00 each from the Settlement Amount for services rendered to the Class. In addition, original Named Plaintiff Alycia Carrillo will apply to the Court to receive $5,000.00 from the Settlement Amount for services rendered to the Class.  Defendants will not oppose such applications.  The service awards and the requirements for obtaining such payments are separate and apart from, and in addition to, Plaintiffs' recovery from the Net Settlement Fund.  The substance of the above-referenced Plaintiffs' application for service payments is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy and good faith of the settlement of the Litigation. The outcome of the Court's ruling on the application for service awards shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Judgment and Final Approval. Any service awards not approved by the Court shall be returned to the QSF and will be distributed pro-rata to eligible Class Members.

3.5     **Distribution to Qualified Class Members.**

A.     Qualified Class Members will be deemed eligible for a payment hereunder.

B.     A Qualified Class Member's proportionate share of the Net Settlement Fund shall be determined by the Claims Administrator pursuant to the formula set forth below:

(1) The Net Settlement Fund shall be paid to Class Members who worked during the period of June 12, 2007 through December 31, 2013.

(2) All Class Members who worked as bartenders and/or servers shall receive one (1) point for every week worked as a bartender and/or server prior to April 9, 2011.

(3) All Class Members who worked as bartenders and/or servers shall receive two (2) points for every week worked as a bartender and/or server between April 9, 2011 and December 31, 2013.

(4) All Class Members who worked as bussers and/or runners shall receive one (1) point for every week worked as a busser and/or runner between April 9, 2011 and December 31, 2013.

(5) All Class Members who filed FLSA opt-in forms to join the Litigation shall receive one (1) point for each week worked during the FLSA limitations period prior to December 31, 2013.

(6) The Net Settlement Fund will be divided by the aggregate number of points accrued by all of the Qualified Class Members who worked during the June 12, 2007 through December 31, 2013 period ("Point Value").

(7) Each Qualified Class Member's total points will be multiplied by the Point Value to determine his or her Individual Settlement Amount.

C. Defendants will pay the employer's share of taxes in addition to the Net Settlement Fund. Any portion of the taxes on the uncashed checks will revert back to Defendants.

D. Defendants and the Claims Administrator shall exchange such information as is necessary for the Claims Administrator to make proper tax withholdings and comply with tax reporting obligations as described in Section 3.5.

E. The Claims Administrator shall mail to all Qualified Class Members their proportionate share of the Net Settlement Fund. The Claims Administrator shall use reasonable efforts to make an additional mailing to Qualified Class Members whose checks are returned because of incorrect addresses. Such efforts shall include using social security numbers to obtain better address information.

F. The distribution of the First Settlement Installment payment by the Claims Administrator will be made 30 days following June 1, 2015, or 30 days following the effective date, whichever is later. The distribution of the Second Settlement Installment payment will be made on June 15, 2016.

G. Qualified Class Members will have One Hundred Eighty (180) calendar days from the date each settlement check is issued to them to redeem their settlement payments. If Qualified Class Members do not redeem their settlement payment

11

checks within the 180-day period, their settlement checks will be void.  If a Qualified Class Member alerts Class Counsel, Defendants' Counsel, or the Claims Administrator during the 180-day period to redeem settlement payments that he or she has not received his or her settlement check, the Claims Administrator will, upon confirming that the settlement check in question has not been redeemed, issue a stop payment on the Qualified Class Member's original settlement check and reissue that Qualified Class Member's settlement check.  All such reissued checks will be valid for forty-five (45) days after the date of issue and will be void thereafter.

H.     Any un-cashed settlement checks and all amounts remaining in the net settlement fund One Hundred Ninety (190) days after the mailing of the First Settlement Installment will revert to Defendants, except that any reissued checks, as discussed in Section 3.5(G), will not revert to Defendants until fifty five (55) days after the mailing of the reissued checks.  Following payment of the Second Settlement Installment, all un-cashed settlement checks will revert to Defendants ten (10) days after both (i) the expiration of the Second Settlement Installment 180-day redemption period, and (ii) the expiration of the 45 day redemption period for any reissued checks.  At that time, the Claims Administrator will mail a check to Defendants' Counsel consisting of the total amount of unclaimed funds remaining in the Escrow Account.

I.      All payments to Qualified Class Members made pursuant to this Agreement shall be deemed to be paid to such Qualified Class Members solely in the year in which such payments actually are received by the Class Members.  It is expressly understood and agreed that the receipt of such settlement payments will not entitle any Class Member to additional compensation or benefits under any of Defendants' bonus, contest or other compensation or benefit plans or agreements in place during the Class Period, nor will it entitle any Class Member to any increased retirement, 403b plan, 401K benefits or matching benefits or deferred compensation benefits.  It is the intent of this Settlement that the settlement payments provided for in the Stipulation of Settlement are the sole payments to be made by Defendants to the Class Members, and that the Class Members are not entitled to any new or additional compensation or benefits as a result of having received the settlement payments (notwithstanding any contrary language or agreement in any benefit or compensation plan document that might have been in effect during the Class Period).

3.6    **Taxability of Settlement Payments.**

A.     For tax purposes, 25% of payments to Qualified Class Members pursuant to Section 3.4 shall be treated as W-2 wage payments and 75% of such payments shall be treated as 1099 non-wage income as liquidated damages, statutory penalties and  interest.

B.     Payments treated as W-2 wages pursuant to Section 3.5(A) shall be made net of all applicable employment taxes, including, without limitation, federal, state and

local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and social security number on an IRS Form W-2. Payments treated as liquidated damages, statutory penalties and interest pursuant to Section 3.5(A) and (B) shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and social security number on an IRS Form 1099. Payments of attorneys' fees and costs pursuant to Section 3.2 shall be made without withholding. Class Counsel will receive a Form 1099 for this payment. Any Service Payments made pursuant to Section 3.3 shall be made without withholding and reported to the IRS and the payee under the payee's name and social security number on an IRS Form 1099.

C.      The employee portion of all applicable payroll taxes shall not be Defendants' responsibility. Any tax responsibility for the non-wage portion of the payments to Qualified Class Members shall not be Defendants' responsibility.

D.      Plaintiffs, on behalf of the Class and each individual member of the Class, acknowledge and agree that each individual Class Member will be solely responsible for all taxes, interest and penalties due with respect to any payment received pursuant to this Agreement (other than taxes specified in Section 3.5(B)). Plaintiffs, on behalf of the Class and each individual member of the Class, acknowledge and agree that they have not relied upon any advice from Defendants as to the taxability of the payments received pursuant to this Agreement.

## 4.      RELEASE

### 4.1    Release of Claims.

A.      By operation of the entry of the Judgment and Final Approval, except as to such rights or claims as may be created by this Agreement, each individual Class Member, who worked at any time as a bartender and/or server, and who does not timely opt-out pursuant to this Agreement, on his or her behalf and on behalf of his or her respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys, forever and fully releases Releasees, as well as their owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, insurers, reinsures, parents, subsidiaries, affiliates, benefit plans, plan fiduciaries, and/or administrators, and all persons acting by, through, under or in concert with any of them, from all wage and hour claims asserted, or wage and hour claims that could have been asserted, under federal or state laws by and on behalf of the Class Members in the Litigation.  The Released Claims include all claims under the Fair Labor Standards Act and New York Labor Law for minimum or overtime wages, any related wage and hour claims, all claims for gratuities, and all claims for statutory penalties for failure to comply with the Wage Theft Prevention Act, interest on such claims, and attorneys' fees and costs related to such claims through the date this Settlement Agreement and Release is executed by all parties.

Individual Class Members who worked at any time as a bartender and/or server shall be issued settlement checks with the following language:

> By endorsing this check, I consent to join the FLSA collective action against Defendants styled as *Carpenter, et al., v. Paige Hospitality Group, LLC, et al.*, 13-cv-4009, and expressly release Defendants from all wage and hour claims under the Fair Labor Standards Act and the New York Labor Law which have been brought in the Litigation or that are based on the same facts and circumstances as the claims in the Litigation, including but not limited to overtime and minimum wage claims for all time periods through December 31, 2013.

The Claims Administrator will provide Defendants with a photocopy of each endorsed check. Scanned photocopies shall be provided to Defendants' counsel simultaneous with payment to Defendants of any reverted funds as provided for in paragraph 3.5(H) above.

B.   By operation of the entry of the Judgment and Final Approval, except as to such rights or claims as may be created by this Agreement, each individual Class Member, who worked at any time as a busser and/or runner, and who does not timely opt-out pursuant to this Agreement, on his or her behalf and on behalf of his or her respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys, forever and fully releases Releasees, as well as their owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, insurers, reinsures, parents, subsidiaries, affiliates, benefit plans, plan fiduciaries, and/or administrators, and all persons acting by, through, under or in concert with any of them, from all claims under the Wage Theft Prevention Act (for the avoidance of doubt, these are NYLL 195 claims for annual wage notices and weekly wage statements), interest on such claims, and attorneys' fees and costs related to such claims through the date this Settlement Agreement and Release is executed by all parties.

C.   In addition to the waiver and release contained in Sections 4.1(A)-(B) above, and in consideration for the payment(s) received under Section 3.1(A) as well as Section 3.3, Named Plaintiffs and Original Named Plaintiff Alycia Carrillo, their heirs, executors, administrators, successors and assigns, voluntarily release and forever discharge Defendants, and any of their owners, subsidiaries, divisions, affiliated entities, agents, officers, principals, trustees, administrators, executors, attorneys, employees, former employees, insurers, predecessors, successors and assigns, both individually and in their official capacities (collectively "Releasees") of and from any actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, judgments, obligations, union grievances, claims, charges, complaints, appeals and demands whatsoever, in law or equity, which they may have against Releasees as of the date of execution of this Agreement, whether known or unknown, asserted or unasserted, including, but not limited to, any alleged violation of: Title VII of the Civil Rights Act of 1964,

14

42 U.S.C. § 2000e et seq.; the Civil Rights Act of 1991, Pub. L. No. 102-166, Sections 1981 through 1988 of Title 42 of the United States Code, 42 U.S.C. §§ 1981-1988; the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq.; the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 et seq.; the Immigration Reform and Control Act, as amended; the Workers Adjustment Retraining Notification Act, as amended; the Family and Medical Leave Act; the New York City Administrative Code; the New York State Human Rights Law, New York Executive Law § 290 et seq.; the New York Civil Rights Law, New York Civil Rights Law § 1 et seq.; Article 6 of the New York Labor Law, New York Labor Law § 190 et seq.; the New York occupational safety and health laws; any other federal, state, city or local human rights, civil rights, wage-hour, wage-payment, pension, employee benefits, labor or other laws, rules, regulations and/or guidelines, constitutions or ordinances; any contract (whether oral or written, express or implied) or tort laws; any claim arising under the common law; any other claim for unpaid wages, employment discrimination, retaliation, wrongful termination, constructive discharge, pain and suffering, mental anguish, intentional and/or negligent infliction of emotional distress; any claim for costs, fees, or other expenses, including attorneys' fees or any other action against Releasees, based upon any conduct occurring up to and including the date of Plaintiffs' execution of this Agreement.

4.2   **Release of Fees and Costs for Settled Matters.**   Plaintiffs, and each individual Qualified Class Member, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that they may have against Defendants for attorneys' fees or costs associated with Class Counsel's representation of Plaintiffs and the Class.

4.3   **No Assignment.**   Plaintiffs, and each individual Class Member, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any interest or claim in this Litigation, or any portion thereof.   Class Members who currently are in bankruptcy and/or whose claims properly belong, in whole or in part, to their bankruptcy estate, shall take the steps necessary to ensure that the trustee in bankruptcy waives any claim in their behalf in exchange for the payment made hereunder.

4.4   **Non-Admission of Liability.**   By entering into this Agreement, Defendants in no way admit any violation of law or any liability whatsoever to Plaintiffs and/or the Class, individually or collectively, all such liability being expressly denied.   Likewise, by entering into this Agreement, Defendants in no way admit to the suitability of this case for class or collective action litigation other than for purposes of settlement.   Rather, Defendants enter into this Agreement to avoid further protracted litigation and to resolve and settle all disputes with Plaintiffs and the Class.   Settlement of the Litigation, negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of this Agreement or the settlement: (a) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendants or of the truth of any of the factual allegations in any and all Complaints filed in the Litigation; and (b) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on

the part of Defendants in any civil, criminal, administrative or arbitral proceeding.  The Parties understand and agree that this Agreement is a settlement document and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of the Agreement.

## 5.    INTERPRETATION AND ENFORCEMENT

5.1     **Cooperation Among the Parties; Further Acts**.  The Parties shall cooperate fully with each other and shall use their best efforts to obtain the Court's approval of this Agreement and all of its terms.  Each of the Parties, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

5.2     **No Publicity.**  The Parties and Class Counsel agree that they will not in any manner publicize the terms of this Settlement Agreement and Release, which includes notifying any member of the media regarding the terms and conditions of the settlement and includes posting or disseminating the terms and conditions of the settlement on any social media (including Facebook, Law 360, Eater, Grub Street, or similar media outlets) or Class Counsel's website.   Such prohibition extends to dissemination of any information, whether oral, electronic or in any document form including but not limited to providing copies of this Settlement Agreement and Release, information regarding the terms of the Settlement Agreement and Release, the filing of any pleadings with the Court including the Motion for Preliminary Approval and/or the Motion for Final Approval of the Settlement Agreement and Release.  Dissemination of this Settlement Agreement and Release and the terms set forth herein shall be limited to filing documents with the Court as is necessary to effectuate the Settlement Agreement and Release.  Class Counsel can post a Westlaw decision regarding Preliminary and/or final approval of the settlement on the "Decisions of Interest" section of their website.

5.3     **Entire Agreement.**  This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

5.4     **Binding Effect.**  This Agreement shall be binding upon the Parties and, with respect to Plaintiffs and the Qualified Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, trustees in bankruptcy, attorneys and assigns.

5.5     **Arms' Length Transaction; Materiality of Terms.**  The Parties have negotiated all the terms and conditions of this Agreement at arm's length.  All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement.

5.6     **Captions.**  The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

16

5.7     **Construction.**  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

5.8     **Blue Penciling.**  Following the Effective Date, if any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

5.9     **Governing Law.**  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

5.10    **Continuing Jurisdiction.**  The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Settlement Agreement and of the settlement contemplated thereby.

5.11    **Waivers, etc. to Be in Writing.**  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

5.12    **When Agreement Becomes Effective; Counterparts.**  This Agreement shall become effective upon its execution.  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if Plaintiffs and Defendants had signed the same instrument.  The failure of one or more Plaintiff to sign this Agreement does not affect its enforceability.

5.13    **Signatures of Named Plaintiffs and Original Named Plaintiff.**  This Agreement is valid and binding if signed by the individual Defendants, Corporate Defendants' authorized representatives and by the Named Plaintiffs and Alycia Carrillo.

5.14    **Facsimile/Electronic Signatures.**  Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party.  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

HAVING ELECTED TO EXECUTE THIS AGREEMENT AND TO FULFILL THE
PROMISES SET FORTH HEREIN AND TO RECEIVE THEREBY THE SETTLEMENT
SUMS AND OTHER CONSIDERATION IN SECTION "3" AND OTHER VOLUNTARY
BENEFITS SET FORTH IN THIS AGREEMENT, NAMED PLAINTIFFS AND ALYCIA
CARRILLO FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION AND
CONSULTATION WITH THEIR ATTORNEYS, ENTER INTO THIS AGREEMENT
INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS THEY HAVE OR
MIGHT HAVE AGAINST RELEASEES.

WE AGREE TO THESE TERMS.

I AFFIRM THAT THE MEANING, EFFECT AND TERMS OF THIS SETTLEMENT
HAVE BEEN FULLY EXPLAINED TO ME.

JOANNE CARPENTER

11/14/2014
_____      By: _____
Date                         Joanne Carpenter

I AFFIRM THAT THE MEANING, EFFECT AND TERMS OF THIS SETTLEMENT
HAVE BEEN FULLY EXPLAINED TO ME.

AIXA MERCADO

11/18/2014
_____      By: _____
Date                         Aixa Mercado

I AFFIRM THAT THE MEANING, EFFECT AND TERMS OF THIS SETTLEMENT
HAVE BEEN FULLY EXPLAINED TO ME.

CHELSEA MOORE

_____      By: _____
Date                         Chelsea Moore

18

HAVING ELECTED TO EXECUTE THIS AGREEMENT AND TO FULFILL THE PROMISES SET FORTH HEREIN AND TO RECEIVE THEREBY THE SETTLEMENT SUMS AND OTHER CONSIDERATION IN SECTION "3" AND OTHER VOLUNTARY BENEFITS SET FORTH IN THIS AGREEMENT, NAMED PLAINTIFFS AND ALYCIA CARRILLO FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION AND CONSULTATION WITH THEIR ATTORNEYS, ENTER INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS THEY HAVE OR MIGHT HAVE AGAINST RELEASEES.

WE AGREE TO THESE TERMS.

I AFFIRM THAT THE MEANING, EFFECT AND TERMS OF THIS SETTLEMENT HAVE BEEN FULLY EXPLAINED TO ME.

JOANNE CARPENTER

_____         By: _____
Date                                             Joanne Carpenter

I AFFIRM THAT THE MEANING, EFFECT AND TERMS OF THIS SETTLEMENT HAVE BEEN FULLY EXPLAINED TO ME.

AIXA MERCADO

_____         By: _____
Date                                             Aixa Mercado

I AFFIRM THAT THE MEANING, EFFECT AND TERMS OF THIS SETTLEMENT HAVE BEEN FULLY EXPLAINED TO ME.

CHELSEA MOORE

Nov 17, 2014                      By: _____
Date                                             Chelsea Moore

18

**I AFFIRM THAT THE MEANING, EFFECT AND TERMS OF THIS SETTLEMENT HAVE BEEN FULLY EXPLAINED TO ME.**

ALYCIA CARRILLO

Nov 13, 2014
_____
Date

By: *Alycia Carrillo*
_____
Alycia Carrillo (Nov 13, 2014)
Alycia Carrillo

PAIGE HOSPITALITY GROUP, LLC

_____
Date

By: _____
Name :

FONDUE 26, LLC

_____
Date

By: _____
Name :

PARK AVENUE A, LLC

_____
Date

By: _____
Name :

MATT SHENDELL

_____
Date

By: _____
Matt Shendell

DENNIS BOGART

_____
Date

By: _____
Dennis Bogart

19

**I AFFIRM THAT THE MEANING, EFFECT AND TERMS OF THIS SETTLEMENT
HAVE BEEN FULLY EXPLAINED TO ME.**

ALYCIA CARRILLO

_____     By: _____
Date                                                Alycia Carrillo


PAIGE HOSPITALITY GROUP, LLC

12/9/14                              By: _____
Date                                      Name :


FONDUE 26, LLC

12/9/14                              By: _____
Date                                      Name :


PARK AVENUE A, LLC

12/9/14                              By: _____
Date                                      Name :


MATT SHENDELL

12/9/14                              By: _____
Date                                      Matt Shendell


DENNIS BOGART

12/9/14                              By: _____
Date                                      Dennis Bogart

19

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOANNE CARPENTER, AIXA MERCADO, and CHELSEA MOORE, on behalf of themselves and all others similarly situated,<br><br>                       Plaintiffs,<br><br>     v.<br><br>PAIGE HOSPITALITY GROUP, LLC, FONDUE 26, LLC, PARK AVENUE A, LLC, MATTHEW SHENDELL and DENNIS BOGART,<br><br>                       Defendants. | Case No.: 13-cv-4009 (GBD) |

## NOTICE OF CLASS ACTION LAWSUIT SETTLEMENT AND FAIRNESS HEARING

**TO: ALL PERSONS EMPLOYED AS A SERVER, RUNNER, BUSSER OR BARTENDER BETWEEN JUNE 12, 2017 AND DECEMBER 31, 2013.**

Based on the records of Paige Hospitality Group, LLC, Fondue 26, LLC and Park Avenue A, LLC (together with Matthew Shendell and Dennis Bogart, "Defendants"), you were employed as a server, runner, busser or bartender at The Ainsworth or Ainsworth Park (collectively, the "Restaurants") between June 12, 2007 and December 31, 2013, and are entitled to participate in the proposed $687,000 settlement (the "Settlement") of the case captioned *Carpenter, et al., v. Paige Hospitality Group, LLC, et al.*, 13-cv-4009 (S.D.N.Y.) (the "Lawsuit").

**PLEASE READ THIS NOTICE CAREFULLY. IT CONTAINS IMPORTANT INFORMATION ABOUT YOUR RIGHTS CONCERNING THE SETTLEMENT. IF THE SETTLEMENT IS APPROVED BY THE COURT AND YOU TAKE NO FURTHER ACTION, YOU WILL BE BOUND BY ITS TERMS.**

1. **WHAT IS A CLASS ACTION?**

   A class action is a lawsuit in which the claims and rights of many people are decided in a single court proceeding. One or more representative plaintiffs, also known as "class representatives," file a lawsuit asserting claims on behalf of the entire class. In this case, the "Class Members" consist of all persons who work or have worked at The Restaurants between June 12, 2007 and December 31, 2013 as servers, runners, bussers and bartenders.

2. **WHAT IS THE PURPOSE OF THIS NOTICE?**

   The Court has ordered that this Notice be sent to you because you were employed by The Restaurants as a server, runner, busser or bartender at some point between June 12, 2007

and December 31, 2013.  The purpose of this Notice is to inform you of your rights under the Settlement Agreement resolving the Lawsuit.

**3.      WHAT IS THIS CASE ABOUT?**

The Lawsuit alleges that the Defendants violated federal and state labor laws by failing to provide Class Members with the full minimum wage, the appropriate overtime compensation for hours worked in excess of 40 per week, and spread-of-hours pay for workdays lasting over 10 hours.  The Lawsuit also alleges that the Defendants unlawfully distributed tips to managers and retained portions of private event gratuities intended for Class Members, and that the Defendants made unlawful deductions from Class Members' wages and failed to reimburse Class Members for the cost and maintenance of mandatory uniforms.  Finally, the Lawsuit alleges that the Defendants violated the Wage Theft Prevention Act by failing to provide Class Members with annual wage notice forms and weekly wage statements that comply with the requirements of the New York Labor Law.

Defendants deny these allegations and believe that service employees received all monies to which they were entitled.  To avoid the burden, expense, and uncertainty of continuing litigation, the Parties agreed to this Settlement.  Defendants have not admitted or conceded and do not admit or concede any wrongdoing or liability.

**4.      WHAT ARE THE TERMS OF THE SETTLEMENT AGREEMENT?**

The Parties have agreed to settle this matter for the total sum of Six Hundred and Eighty-Seven Thousand Dollars and Zero Cents ($687,000.00).  Defendants will pay the Settlement amount in two equal installments.  The first installment is due the later of Forty (40) days after the Court approves the Settlement or June 1, 2015.  The second installment is due on June 1, 2016 (provided that June 1, 2016 is at least 40 days after the Court approves the settlement).

**5.      HOW WILL MY SHARE OF THE SETTLEMENT FUND BE CALCULATED?**

If the Settlement is approved by the Court, the Defendants will pay a total of $687,000.00 in settlement funds (plus the employers' share of withholding taxes).  Subject to Court approval, the following payments and expenses will be deducted from the $687,000.00 settlement amount prior to distribution of the settlement funds to Class Members:

- Service Awards: In recognition of services performed for the Class, the current and original named Plaintiffs in the Lawsuit will apply to the Court for the following additional "service awards": Joanne Carpenter – $10,000.00; Aixa Mercado – $10,000.00; Chelsea Moore – $10,000.00; and Alycia Carrillo – $5,000.

- Attorneys' Fees and Costs: Class Counsel will apply to the Court for attorneys' fees of one-third of the Settlement Fund ($226,710.00) and recovery of costs (up to $3,000.00).

- Administration Expenses: A reasonable amount will be paid from the Settlement Fund to the Claims Administrator selected by Plaintiffs to cover any costs associated with the administration of the settlement payments to Class Members.

If the Court approves these payments, after these deductions, the remaining Settlement Fund (the "Net Settlement Fund") will be distributed to Class Members as set forth below:

- All Class Members who worked as bartenders and/or servers shall receive one (1) point for every week worked as a bartender and/or server prior to April 9, 2011.

- All Class Members who worked as bartenders and/or servers shall receive two (2) points for every week worked as a bartender and/or server between April 9, 2011 and December 31, 2013.

- All Class Members who worked as bussers and/or runners shall receive one (1) point for every week worked as a busser and/or runner between April 9, 2011 and December 31, 2013.

- All Class Members who filed FLSA opt-in forms to join the Litigation shall receive one (1) point for each week worked during the FLSA limitations period prior to December 31, 2013.

- The Net Settlement Fund will be divided by the aggregate number of points accrued by all of the Qualified Class Members who worked during the June 12, 2007 through December 31, 2013 period ("Point Value").

- Each Qualified Class Member's total points will be multiplied by the Point Value to determine his or her Individual Settlement Amount.

You will have One Hundred Eighty (180) calendar days after the date your settlement checks are issued to cash your settlement checks.  If you lose or do not receive your settlement check, you must request a replacement check within 180 days of the check's issue date.  Requests for replacement checks after 180 days of the check's issue date will not be honored.

**6.      HOW MUCH WILL MY PAYMENT BE?**

Based on the formula in the settlement agreement, but depending on whether the Court approves the attorneys' fees, costs and service awards discussed in section 4, the total individual settlement amount you will be entitled to receive is estimated to be approximately $_____.  If you think that amount is not correct, you must contact Class Counsel (contact information in section 7, below) no later than [**45 days from mailing**].

3

7.      **WHAT IS THE LEGAL EFFECT OF THE SETTLEMENT?**

If you are a Class Member who does not opt-out of the Settlement (see section 8, below) and the Settlement is approved by the Court, the Court will enter a Judgment and Final Approval.  If you worked as a bartender or server, the Judgment and Final Approval will operate to fully release any and all wage and hour claims based on or under federal or New York law, including but not limited to all claims for unpaid minimum wages, overtime wages and gratuities, and interest, liquidated damages, and attorneys' fees and costs related to such claims that you may have against the Defendants arising between June 12, 2007 and [date agreement signed].  If you worked as a busser or runner, the Judgment and Final Approval will operate to fully release any and all claims under the Wage Theft Prevention Act (New York Labor Law Section 195 claims for annual wage notices and weekly wage statements) arising through [date agreement signed], including all claims for interest, liquidated damages, statutory penalties and attorneys' fees and costs.

8.      **HOW CAN I RECEIVE A SHARE OF THE SETTLEMENT?**

If you are eligible to receive payment under this Settlement and do not opt-out of this Settlement, you will receive two checks for your share of the Settlement Fund (see section 4 above).  You do not need to take any action in order to receive your share of the Settlement Fund.  If your address changes before you receive either of your settlement check, you must contact Fitapelli & Schaffer, LLP, 475 Park Avenue South, 12th Floor, New York, NY 10016, Tel: 212-300-0375, Fax: 212- 481-1333, to update your mailing address.

9.      **HOW DO I OPT OUT OF THE SETTLEMENT CLASS?**

If you do not want to participate in the Settlement, or if you want the right to pursue your own lawsuit, you may opt-out of the Settlement Agreement.  To opt-out of the Settlement Agreement, you must mail via First Class United States Mail a letter to [Insert claims administrator] stating:  "I OPT OUT OF THE PAIGE HOSPITALITY GROUP WAGE AND HOUR SETTLEMENT."  **The letter must be postmarked no later than [45 days from mailing] and must include your full name and address.**  The letter must be mailed to:

                              **[Insert address here]**

**If you do not opt-out within the time limit set forth above, you will be bound by the terms of the Settlement Agreement.**

10.     **WHAT IF I HAVE AN OBJECTION TO THE SETTLEMENT?**

If you wish to object to the proposed Settlement, you must first do so in writing.  Class Members who have opted-out of the Settlement may not submit objections to the Settlement.  Written objections must be mailed via First Class United States Mail to

4

[Insert claims administrator], [**address**], by [**45 days from mailing**].

Written objections must contain your full name, address, and telephone number, must be signed by you, and must state, "I OBJECT TO THE SETTLEMENT IN CARPENTER v. PAIGE HOSPITALITY GROUP, LLC."  You may include in the letter the reasons you object.

If you object to the settlement and wish to speak at the Fairness Hearing (see section 11, below), you must include with your written objection the reasons for your objection.  The objection should also state: "I intend to appear and wish to be heard at the Fairness Hearing."

If you do not comply with the foregoing procedures and deadlines for submitting objections, you will not be entitled to speak at the Fairness Hearing, contest, or appeal from approval of the settlement or any award of attorneys' fees or expenses, or contest or appeal from any other orders or judgments of the Court entered in connection with the settlement.

All objections will be provided to the Court.  The Parties may file written responses to any objections.

11.    **WHEN IS THE FAIRNESS HEARING AND WHAT HAPPENS AT IT?**

A hearing before the Honorable George B. Daniels will be held on _____ at _____ at the United State District Court, Southern District of New York, 500 Pearl Street, Courtroom 11A, New York, NY 10007 (the "Fairness Hearing").  The purpose of the Fairness Hearing is for the Court to determine whether the Settlement is fair, adequate, and reasonable and should be approved by the Court.  The Court will take into account any objections raised in accordance with the procedures described in section 9, above.

12.    **DO I HAVE A LAWYER IN THIS CASE?**

The law firm of Fitapelli & Schaffer, LLP, 475 Park Avenue South, 12th Floor, New York, NY 10016, has been designated as legal counsel to represent you and the other Class Members.  These lawyers are called Class Counsel.  You will not be charged separately for these lawyers.  Their fees will be paid from the total settlement fund (see section 5, above).  If you want to be represented by your own lawyer, you may hire one at your own expense.

13.    **HOW CAN I EXAMINE COURT RECORDS?**

This Notice does not contain all of the terms of the proposed Settlement or all of the details of these proceedings.  For more detailed information, you may review the underlying documents and papers on file with the Court.  This file may be inspected during the hours of each Court business day at the Office of the Clerk of the Court,

United States District Court, Southern District of New York, 500 Pearl Street, New York, NY 10007.  You may also contact Fitapelli & Schaffer, LLP to schedule a time to review documents in their office.

## 14.    TAX TREATMENT

For tax purposes, 25% of each Class Member's individual settlement payment will be considered back wages subject to lawful deductions and W-2 reporting.  For this amount, normal payroll taxes and withholdings will be deducted pursuant to city, state and federal law.  The remaining 75% of each Class Member's individual settlement payment will be considered liquidated damages and interest subject to 1099 reporting as non-wage income.  At the end of the calendar year, the Claims Administrator will issue each Class Member who has cashed a check an IRS Form W-2 for that portion of the Class Member's settlement payment which is being treated as wages, and an IRS Form 1099 for the portion of the Class Member's settlement payment which is being treated as liquidated damages and interest.  Other than the Defendants' portion of the withholdings, Class Members are responsible for the appropriate payment of any taxes on the payments they receive.  Class Counsel and Defendants' Counsel do not intend this Notice to constitute tax advice, and to the extent that this Notice is interpreted to contain or constitute advice regarding any federal, state or local tax issue, such advice is not intended or written to be used, and cannot be used, by any person for the purpose of avoiding any tax liability or penalties.

If you are presently a party to an individual bankruptcy proceeding, it may be necessary for you to advise the trustee of this settlement.

## 15.    WHAT IF I HAVE ADDITIONAL QUESTIONS?

If you have additional questions about this Notice or want more information, you can contact Class Counsel Brian Schaffer or Eric Gitig at Fitapelli & Schaffer, LLP, 475 Park Avenue South, 12th Floor, New York, NY 10016, (212) 300-0375, info@fslawfirm.com.


By Order of the Court
Dated: [date of mailing]